Filed April 12, 1890.

---◆---

No. 14,154.

## DEVOL ET AL. *v.* DYE ET AL.

GIFT.—*Causa Mortis.—Facts Constituting.*—The deceased had a tin box, which he kept in a private drawer in the vault of a bank safe. Shortly before his death he entrusted the keys of his box and private drawer to the cashier of the bank, in whose custody they remained until after the decedent's death. Three days before his death, with knowledge that dissolution was imminent, he declared to the cashier that it had always been his purpose to give P. G. D. $5,000, and that he had put $2,000 in gold in a bag and marked the name of the latter upon it, and left it in the tin box in the vault (the bag so marked was found after his death in the tin box); he then directed the cashier to go to the bank and count out $3,000 more in gold coin and put in a sack and mark it as the other sack was marked, and that he should also count out $1,000 in currency and place it in an envelope for Mrs. N., and put her name upon it. He then directed that in case of his death, the sacks and package should be delivered by the cashier to the parties indicated by the writing thereon. The testator upon being informed that his directions as to counting out the gold coin and currency and marking it had been carried out, expressed his approval.

*Held*, that the above facts show a valid delivery to the cashier for the use of the donees, and that the delivery was made in view of impending death.

SAME.—*Causa Mortis.— When Consummated.*—A gift *causa mortis* is consummated when a person in peril of death, and under the apprehension of approaching dissolution from an existing disorder, delivers, or causes to be delivered, to another, or affords the other the means of obtaining possession of any personal goods for his own use, upon the express or im-

plied condition that in case the donor shall be delivered from the peril of death, the gift shall be defeated.

SAME.—*Delivery to Third Person.—Validity of.*—The delivery need not be made to the donee personally, but may be made to another as his agent or trustee. A delivery thus made is as effectual as though it had been made directly to the donee.

SAME.—*Delivery to Third Person.—Effect of.—Trustee for Intended Donee.*— Where one in view of impending dissolution, clearly and intelligently manifests an intention to make a present gift of personal property to another, and in consummation of his intention makes such a delivery to a third person for the use of the intended donee as he is then capable of making, considering the character and situation of the property, the person to whom the delivery is made will be presumed, in the absence of countervailing circumstances, to take the property as the trustee of the intended donee, and not merely as the agent of the donor.

SAME.—*Donees.—Acceptance of Gift by Them.—Presumption as to.—Trustee.— Delivery.— When Effectual.*—It was not necessary that the donees should have constituted the cashier of the bank their bailee or trustee, nor that they should have known of the intended gift, or of the delivery, in order to make it an effectual delivery to him as their trustee. The gift being beneficial to them, their acceptance of it is presumed, until the presumption is removed.

SAME.—*Trustee for Donees.—Competent Witness.*—The cashier of the bank being the trustee for the donees, and not the agent of the donor, was a competent witness in a suit involving the validity of the gift.

From the Boone Circuit Court.

*A. J. Seay, J. A. Abbott* and *S. M. Ralston,* for appellants.
*C. S. Wesner, O. D. Wesner, R. W. Harrison* and *B. S. Higgins,* for appellees.

MITCHELL, C. J.—It appears from the special finding of facts that William J. Devol, late of Boone county, died testate on the 6th day of December, 1886, leaving an estate of the probable value of $80,000, and leaving one brother living, and the descendants of three deceased brothers, as his only heirs. At, and for a long time prior to his death, the testator had been the president of the First National Bank of Lebanon. During this time he had a tin box, which he kept in a private drawer in the vault of the bank safe, and in this he kept stocks, bonds, money, and other valuables belonging to him personally. Both box and drawer were

kept locked, and no one had access to it but the testator. On the 15th day of November, 1886, being in failing health, he went South, returning to his home on the 2d day of December following, very sick.    From that time until he died, which was four days after he returned, he was confined to his bed, and, while he did not wholly despair of recovery, he fully realized the dangerous condition he was in, and was apprised of the probable fatal termination of his malady. Before going South he entrusted the key of his box, and private drawer in the safe, to Mr. Lane, the cashier of the bank, and these remained in the custody of Mr. Lane from that time until after the testator's death.    On the day following the one on which he returned from the South, while sick, and propped up in bed, the testator declared to Mr. Lane that it had always been his purpose to give Pressley G. Dye, who was a cousin, $5,000, either in cash or bank stock, and that he had put $2,000, in gold, in a bag and marked the name of the latter upon it, and left it in the tin box in the vault.    He then directed Lane to go to the bank and count out $3,000 more in gold coin and put it in a sack and mark it as the other sack was marked, and that he should also count out $1,000, in currency, and place it in an envelope for Mrs. Nickerson, and put her name upon it.    He then directed that, in case of his death, the sacks and package should be delivered by Lane to the parties indicated by the writing thereon.

The gold coin and currency were counted out of the tin box and placed in sacks and in a package, and marked by Lane as directed, after which the latter informed the testator that his directions had been carried out, to which he replied approvingly.    The sacks containing the gold coin, and the package with the currency, remained in the box and drawer until after the testator's death, Lane retaining the keys.    At the time of the testator's death the tin box was found to contain, in addition to other large sums of money, a sack containing $2,000, marked in the handwriting of the

Devol *et al. v.* Dye *et al.*

testator as follows: "$2,000. This belongs to P. G. Dye. 11–15–1886." The controversy here is between Pressley G. Dye and Mrs. Nickerson, on the one hand, the former claiming the two sacks of gold coin, the latter claiming the package containing the currency, and certain residuary legatees under the will of the testator who assert the invalidity of the gift and claim the whole fund as part of the residue of the testator's estate.

A gift *causa mortis* is consummated when a person in peril of death, and under the apprehension of approaching dissolution from an existing disorder, delivers, or causes to be delivered, to another, or affords the other the means of obtaining possession of any personal goods for his own use, upon the express or implied condition that in case the donor shall be delivered from the peril of death the gift shall be defeated. Blackstone defines *donatio causa mortis* to be a gift in prospect of death, "when a person in his last sickness, apprehending his dissolution near, delivers or causes to be delivered, to another, the possession of any personal goods to keep as his own in case of his decease."

The chief distinction between gifts *inter vivos* and those of the character here in question, is that while the former are consummated by delivery the title to the property is irrevocably vested, while in the latter the title is ambulatory and *inchoate* until the death of the donor occurs.

The concurrence of three things is essential to the consummation of a gift *causa mortis* : (1) The thing given must have been of the personal goods of the donor. (2) It must have been given while the latter was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady ; and, (3) the possession of the thing given must have been actually, or constructively, delivered to the donee, or to some one for his use, with the intention that the title should then vest conditionally upon the death of the donor, leaving sufficient assets in addition to pay his debts. 8 Am. and Eng. Encyc. of Law, 1349, 1354. A

mere unexecuted purpose, however clearly or forcibly expressed, so long as it rests merely in intention, is not effectual. The intention must not only have been manifested, but, in addition, in order to consummate the gift, the donor must have transferred the possession of the thing to the donee in person, or to some one for his use, under such circumstances as that the person to whom delivery is made is thenceforward affected with a trust or duty in the donee's behalf. *Smith* v. *Ferguson*, 90 Ind. 229; *Wilcox* v. *Matteson*, 53 Wis. 23; *Gano* v. *Fisk*, 43 Ohio St. 462; 21 Am. Law Rev. 732; 19 Cent. Law Jour. 222; *Walsh's Appeal*, 122 Pa. St. 177.

No particular form of words is necessary to give effect to the transaction if the intention of the donor sufficiently appears, and the intention to give is either accompanied with or followed by acts requisite to constitute a valid delivery. *Kenistons* v. *Sceva*, 54 N. H. 24; *Martin* v. *Funk*, 75 N. Y. 134; *Coleman* v. *Parker*, 114 Mass. 30; *Hatch* v. *Atkinson*, 56 Maine, 324; *Clough* v. *Clough*, 117 Mass. 83.

The title of the donee in gifts *causa mortis* is of an inchoate character until the death of the donor occurs; but notwithstanding this, where the nature of the gift admits of it, a complete manual transfer of the possession of the subject should take place, and the transaction should be accompanied by words, signs, or a writing adequately expressive of the donor's intention. Flood Wills Per. Prop. 27.

It is well settled, however, that the delivery need not be made to the donee personally, but may be made to another as his agent or trustee. A delivery thus made is as effectual as though it had been made directly to the donee. Thus, in *Milroy* v. *Lord*, 4 De Gex F. & J. 264, Lord Chief Justice TURNER said : " I take the law of this court to be well settled, that, in order to render a voluntary settlement valid and effectual, the settlor must have done everything which, according to the nature of the property comprised in the settlement, was necessary to be done in order to transfer the property and render the settlement binding upon him. He

may of course do this by transferring the property to the persons for whom he intends to provide, and the provision will then be effectual, and it will be equally effectual if he transfers the property to a trustee for the purpose of the settlement, or declares that he himself holds it in trust for those purposes; and if the property be personal, the trust may, as I apprehend, be declared either in writing or by parol." *Martin* v. *Funk, supra; Beals* v. *Crowley,* 59 Cal. 665; *Hill* v. *Stevenson,* 63 Maine, 364 (18 Am. Rep. 231); *Minor* v. *Rogers,* 40 Conn. 512; *Meriwether* v. *Morrison,* 78 Ky. 572.

It has been held that if delivery is made to a third person, with instructions to deliver to the intended donee at the death of the donor, the latter retaining dominion over it meanwhile, the delivery is ineffectual, because the third person in such a case becomes merely the agent or bailee of the donor. If, however, the delivery is made to a third person for the use of the donee, or under such circumstances as indicate that the donor relinquishes all right to the possession or control of the thing given, and intends to vest a present title in the donee, the gift will be sustained. *Farquharson* v. *Cave,* 2 Coll. 356 (15 L. J. Ch. 137); Flood Wills Per. Prop. 28.

Where one, in view of impending dissolution, clearly and intelligently manifests an intention to make a present gift of personal property to another, and in consummation of his intention makes such a delivery to a third person for the use of the intended donee as he is then capable of making, considering the character and situation of the property, the person to whom delivery is thus made will be presumed, in the absence of countervailing circumstances, to take the property as the trustee of the intended donee, and not merely as the agent of the donor. *Shackleford* v. *Brown,* 89 Mo. 546; *Michener* v. *Dale,* 23 Pa. St. 59; *Sessions* v. *Mosely,* 4 Cush. 87.

Thus it has been said, " the death-bed delivery to a third person for the donee, which takes effect, is essentially a de-

livery, not to any agent of the donor, but to a trustee for the donee." 2 Schouler Per. Prop., section 176. *Bouts* v. *Ellis,* 17 Beav. 121; *Grymes* v. *Hone,* 49 N. Y. 17; *Borneman* v. *Sidlinger,* 15 Maine, 429; *Drury* v. *Smith,* 1 P. Wms. 404.

Expressions are sometimes found in the books to the effect that gifts *causa mortis* are not favored in law, because of the opportunity which they afford for the perpetration of frauds upon the estates of deceased persons by means of perjury and false swearing; but gifts of the character of that in question are not to be held contrary to public policy, nor do they rest under the disfavor of the law when the facts are clearly and satisfactorily shown which make it appear that they were freely and intelligently made. *Ellis* v. *Secor,* 31 Mich. 185.

While every case must be brought within the general rule upon the points essential to such a gift, yet as the circumstances under which *donationes mortis causa* are made must, of necessity, be infinite in variety, each case must be determined upon its own peculiar facts and circumstances. *Dickeschied* v. *Exchange Bank,* 28 West Va. 340; *Kliff* v. *Weaver,* 94 N. C. 274 (55 Am. Rep. 601).

The rule requiring delivery, either actual or symbolical, must be maintained; but its application is to be mitigated and applied according to the situation of the subject of the gift, and the condition of the donor.

The intention of a donor, in peril of death, when clearly ascertained and fairly consummated, within the meaning of well established rules, is not to be thwarted by a narrow and illiberal construction of what may have been intended for and deemed by him a sufficient delivery. The rule which requires delivery of the subject of the gift is not to be enforced arbitrarily. *Stephenson* v. *King,* 81 Ky. 425 (50 Am. Rep. 172).

It clearly appears from the facts found in the present case that the sacks containing the gold coin, as well as the package in which the currency was sealed, were delivered to the

cashier of the bank for the use of the intended donees. Each parcel of money contained, written upon it, what, in effect, amounted to the declaration of a trust in favor of the person who was indicated to be the owner of its contents. The money was carefully counted and placed in packages, thus separating it from all the other money and valuables of the donor. Upon each parcel, or package, appeared a written declaration made by, or at the request of the donor, indicating as plainly as language could the intention of the latter in respect to the title and ownership of the property. The character of the property was such that no prudent person would have directed its removal from the vault of the bank. The donor had relinquished the key to his private drawer and tin box to the cashier of the bank, thereby effectually surrendering, so far as could be, all dominion over the property, and affording to the donees the means of obtaining possession of it.

Without pausing to review the authorities, it is sufficient to say that where property is delivered to a third person for the use of another, as a gift *causa mortis*, and its delivery is accompanied by a written declaration clearly indicating that it is delivered for the use, or upon a trust for an intended donee, or where a death-bed delivery is made in the presence of witnesses, who are disinterested and called for the purpose, the intention of the donor should not be permitted to fail by a narrow and illiberal construction, in case a delivery corresponding with the condition of the donor and the situation of the property was actually made. *Ellis* v. *Secor, supra; Williams* v. *Guile,* 117 N. Y. 343; 2 Schouler Per. Prop., section 179.

Our conclusion is that the facts found show a valid delivery to the cashier for the use of the donees, and that the delivery was made in view of impending death.

The conclusion having already been reached that the cashier of the bank was not the agent of the donor, it follows he was not incompetent to testify, even if the appel-

lant's contention should be conceded, that as the agent of the donor he would have been incompetent.

It may not be amiss to say that it was not necessary that the donees should have constituted the cashier of the bank their bailee, or trustee, nor that they should have known of the intended gift, or of the delivery, in order to make it an effectual delivery to him as their trustee. The gift being beneficial to them, their acceptance of it is presumed until the presumption is removed. *Blasdel* v. *Locke*, 52 N. H. 238; *Darland* v. *Taylor*, 52 Iowa, 503; *Trowell* v. *Carraway*, 10 Heisk. 104.

The judgment is affirmed, with costs.

Filed April 12, 1890.