OGDON, ADMINISTRATOR, *v.* WASHINGTON NATIONAL
BANK.

[No. 11,979. Filed November 20, 1924.]

1. BANKS AND BANKING.—*Depositor has merely chose in action against bank for deposits.*—A depositor in a bank does not own the money deposited; he merely has a chose in action against the bank for the money on deposit. p. 191.

2. GIFTS.—*Delivery of a gift of a chose in action may be made by verbal direction to pay to donee which is accepted.*—A gift *inter vivos* of a chose in action arising from a debt that is not evidenced by writing may be made by an unqualified direction by the donor to the debtor to pay the debt to the donee instead of to the creditor, when the debtor accepts the arrangement and agrees to carry out the wish of the donor, such direction and acceptance constituting a sufficient delivery. p. 191.

3. ASSIGNMENTS.—*A verbal chose in action may be assigned verbally if debtor agrees thereto.*—A chose in action not evidenced by writing may be assigned without writing, and, if the debtor is aware of the assignment and promises to pay the assignee, the latter may maintain an action to recover the debt. p. 192.

4. GIFTS.—*A gift of a chose in action may be made without a written direction to pay to the donee and without a written acceptance.*—Neither the request by the donor that his debtor pay the amount due to the donee nor the acceptance of the obligation, in the absence of a statute requiring it, need be in writing. p. 194.

5. GIFTS.—*Acts showing intention to make a gift must be liberally construed.*—The intention of the donor, when clearly ascertained and fairly consummated, within the meaning of well-established rules, is not to be thwarted by a narrow and illiberal construction of what may have been intended for and deemed by him a sufficient delivery; the rule which requires delivery of the subject of the gift is not to be enforced arbitrarily. p. 195.

6. GIFTS.—*Sufficiency of evidence to sustain.*—Evidence *held* sufficient to sustain finding of gift *inter vivos* of bank deposit. p. 195.

From Daviess Circuit Court; *Milton S. Hastings*, Judge.

Action by John Ogdon, as administrator of the estate of Gertrude E. Brooks, against the Washington Nation-

al Bank.   From judgment for defendant, the plaintiff appeals.   *Affirmed.*

*C. K. Tharp* and *C. G. Gardiner,* for appellant.
*Alvin Padgett* and *Arthur Rogers,* for appellee.

McMAHAN, J.—On January 9, 1923, appellant's decedent, Gertrude E. Brooks, had on deposit in appellee bank $500 subject to check.   Mrs. Brooks died January 12, 1923.   This is an action by appellant against appellee to recover the amount of said deposit.   Appellee's answer was in three paragraphs, the first being a general denial.   The second alleged that the decedent made a gift *inter vivos* to her mother, Mattie Wilson, of the deposit in the bank.   The third alleged a gift of the deposit to Mrs. Wilson *causa mortis*.   From a judgment in favor of appellee, appellant appeals and contends that the court erred in overruling his motion for a new trial.   The specifications in the motion for a new trial are that the decision of the court is not sustained by sufficient evidence, and is contrary to law.

The facts, in substance, are as follows:   On January 9, 1923, Mrs. Brooks had on deposit in appellee bank subject to check $500.   At that time, she was staying with her mother, Mrs. Mattie Wilson, in Washington, Indiana.   She was a married woman, her husband at that time being in Indianapolis.   Although there is no direct evidence on the subject, it is inferable that Mrs. Brooks had lived at Indianapolis with her husband before she went to stay with her mother and that she and her husband were not living together.   A few days prior to January 9, Mrs. Brooks made arrangement to go to a hospital at Washington for the purpose of an operation for the removal of a tumor.   On January 9, in company with her mother and a Mrs. Raymond, Mrs. Brooks went to appellee bank.   The evidence as to what occurred at the bank is conflicting.

Mrs. Wilson and Mrs. Raymond testified that Mrs. Brooks, at that time, told Mr. Wise, the cashier of appellee bank, that she was going to the hospital that evening for an operation, that it was a very serious operation and that she wanted to give the money she had on deposit there to her mother and wanted Mr. Wise to fix it so her mother could check it any time she wanted to and asked Mr. Wise to take her mother's signature; that Mr. Wise said: "Very well, Mrs. Brooks," and that he took her signature. Mr. Wise testified that he did not remember having any conversation with Mrs. Brooks about transferring the account or deposit to her mother. Miss Lena Bassett, an employee in the bank, testified that Mrs. Brooks, her mother and another lady came in the bank and that she talked with them, that she did not see or hear Mr. Wise talk to them, that Mrs. Brooks asked concerning her deposit and said she was going to the hospital for an operation and if anything happened to her, she wanted her mother to have that money, that the witness said to her, "Do you mean in case of death?" and that Mrs. Brooks said: "Yes," and that the witness got the ledger sheet showing the account of Mrs. Brooks and marked it, "In case of death Mrs. Mattie Wilson to ck."

The women left the bank and returned to the home of Mrs. Wilson, where Mrs. Brooks handed her mother a small box containing her pocket book, in which there was $55 in cash, her bank book showing the deposit of $500 in appellee bank, and her keys to a safety deposit box in an Indianapolis bank. When she gave the box to her mother, she told her mother that the things in the box were the mother's, and stated to the two women who were present at that time that she had given her mother everything she had and that she did not have a "penny." Mrs. Wilson took possession of the box and contents. About an hour later, Mrs. Brooks

went to the hospital. She was operated on the next day and remained in the hospital until January 12, when she died as the result of the operation. On January 12, a short time after Mrs. Brooks died, her mother went to the bank, drew a check for the $500, which was then placed to her credit, and later checked out and used by her.

At the time of her death, Mrs. Brooks had $500 in cash in a safety deposit box in an Indianapolis bank. She also had $250 on deposit in an Indianapolis bank. A short time before Mrs. Brooks died, her husband, who was then in Indianapolis, being notified of her condition, went to Washington but did not get there until after his wife had died. Mrs. Wilson gave him the $55 for the purpose of paying for a burial lot. Instead of using the money for that purpose, he later gave it to appellant. Appellant also received the $500 which was in the safety deposit box. The $250 which was on deposit was checked out by Mr. Brooks and applied on the hospital and burial expenses.

There were no debts or claims against the estate of Mrs. Brooks other than those incurred on account of the operation at the hospital, the burial expenses and the cost of administration. After applying the $250 on the claims against the estate, there remained a balance of $347.50 owing the physician who performed the operation at the hospital and owing on account of claims for burial expenses. The appellant as administrator received and still has in his hands $555 with which to pay the said $347.50, and the costs of administration.

It thus appears that at the time when Mrs. Brooks died, and when this action was commenced, the estate was solvent and that appellant had in his hands sufficient money to pay all the claims against the estate including the costs of administration, other than the

costs of this action. That after paying the expenses of the last sickness and burial, there remained in appellant's hands $207.50 for the payment of the costs of administration.

Appellant's main contention is that the evidence fails to show such a delivery of the deposit in appellee bank as will sustain a gift *inter vivos* or *causa mortis*. The court, by its general finding, found the decedent had made a gift of the $500 to her mother. There is nothing in the record however, to disclose whether the court found the gift to be *inter vivos* or *causa mortis*. If the evidence is sufficient to sustain a gift, either *inter vivos* or *causa mortis*, the judgment must be affirmed.

1. The testimony of Mrs. Wilson and Mrs. Raymond as to the transaction at the bank and the evidence as to what took place on their return to the house just before Mrs. Brooks went to the hospital is undoubtedly sufficient to sustain a finding that there was a gift *inter vivos*. This is not a case like *Zehner, Trustee,* v. *Zehner Estate* (1920), 74 Ind. App. 334, 129 N. E. 244, and similar cases where there was an attempted gift of a bank deposit through the delivery of a check which was not accepted by the bank or cashed before the death of the maker of the check. Nor is this a gift of actual money. Mrs. Brooks did not have $500 in money. What she had was a chose in action not represented by any instrument or document capable of indorsement and delivery, such as a promissory note.

2. Where the evidence is sufficient to show an intention to make a gift *inter vivos* of a chose in action, arising from a debt not evidenced by writing, an unqualified direction by the donor to the debtor to pay the debt to the donee, instead of the creditor, is a sufficient delivery of the gift, when the debtor accepts the arrangement and agrees to carry out the wish

of the donor, *Dinslage* v. *Stratman* (1920), 105 Nebr. 274, 180 N. W. 81, 14 A. L. R. 702.

In *In re Stockham* (1922), 193 Iowa 823, 186 N. W. 650, 22 A. L. R. 765, where registered government bonds and war savings stamps were held proper subjects of gift although the assignment was not in accordance with the regulations of the Treasury Department, the court said: "Many obligations and choses in action, such as notes, bonds, bank certificates, insurance policies, and certificates of stock, have been held to be the proper subject of a gift, without the formality of a written assignment."

In *Castle* v. *Persons* (1902), 117 Fed. 835, 54 C. C. A. 133, the court said: "We understand that a mere request on a bailee, depository, or debtor to pay money to the donee is not a sufficient delivery of a chose in action so as to validate a gift causa mortis. Yet where the request or order is accepted by the person upon whom it is made during the lifetime of the donor this is a good delivery. A check upon a bank is in itself, though delivered to the donee, no delivery, but if accepted by the bank during the lifetime of the donor the delivery is good. (Citing authorities.) We see no difference between a verbal order or request and a written order or request, there being no law requiring either to be in writing. Neither need the acceptance be in writing." See, also, *Boyle* v. *Dinsdale* (1914), 45 Utah 112, 143 Pac. 136, Ann. Cas. 1917E 363 where the gift of a deposit in a bank was upheld.

We think a chose in action not evidenced by writing may be assigned without writing, and if the debtor is aware of the assignment and promises to pay 3. the assignee, the latter may maintain an action to recover the debt. *Rollison* v. *Hope* (1857), 18 Texas 446; *Heaton* v. *Angier* (1835), 7 N. H. 397, 28

Am. Dec. 353; *Wilson* v. *Coupland* (1821), 5 Barn. & Ald. 228.

And the Supreme Court of Michigan, in upholding a gift of a chose in action not evidenced by writing, said: "This is not the case of a gift *in futuro*, and therefore is not subject to the law governing such gifts. Between the defendant and his father (the donor), it was an existing cause of action. Between the father and the plaintiff, it was a gift,—a gift of a promise to pay money in the future, of an existing cause of action; but the gift itself was a gift *in praesenti*. When the defendant, who had promised to pay the money (a promise evidenced by no writing), at the request of the father, to whom the promise was made, agreed with the sister, for whose benefit the money was to be paid, that it should be paid to her, there was all the delivery possible under the circumstances, and a delivery sufficient to answer the requirements of law." *Ebel* v. *Piehl* (1903), 134 Mich. 64, 95 N. W. 1104.

In *Elam* v. *Kean* (1833), 4 Leigh (Va.) 333, 26 Am. Dec. 322, it is said: "There are many things, of which actual, manual tradition cannot be made, either from their nature, or the situation at the time; it is not the intention of the law to take from the owner the power of giving these; it merely requires that he shall do what, under the circumstances, will in reason, be considered equivalent to an actual delivery."

The Supreme Court of Massachusetts, in *Mangan* v. *Howard* (1921), 238 Mass. 1, 130 N. E. 76, said: "It is settled in this Commonwealth that an unregistered bond, a bill of exchange, a promissory note, a policy of life insurance or a savings bank book, without an assignment, like a chattel may be the subject of a legal gift *inter vivos* or *mortis causa*. It is also settled that evidences of debt, as distinguished from the debt itself,

that is, chose in action without writing, may be the subject of a valid gift, and as such constitute an equitable assignment of the debt or other obligation. In either case by an unqualified delivery and acceptance the title passes, the gift becomes perfect and carries with it an implied irrevocable power to enforce it in the name of the donor." And the same court, in *Herbert* v. *Simson* (1914), 220 Mass. 480, 108 N. E. 65, L. R. A. 1915D 733, said: "The general rule is now well established that choses in action, of which the legal or equitable title can pass by delivery, may be the subject of a valid gift. And the delivery of the chose in action, without formal indorsement or assignment, is sufficient to effectuate the gift where it is the intent and purpose of the donor to transfer the ownership at once."

As was said in *Cook* v. *Lum* (1893), 55 N. J. Law 373, 26 Atl. 803: "Touching things in action, as there can be no actual delivery of them, the legal requirement is, that the donor's voucher of right or title must be surrendered to the donee. Such surrender is deemed equivalent to an actual handing over of the things corporeal."

It may be that a mere request by a donor to his debtor to pay money to a donee is not sufficient delivery of a chose in action so as to validate a gift, yet

4. where the request or order is accepted by the person on whom it is made during the lifetime of the donor, this is a good delivery. Neither the request nor the acceptance, in the absence of a statute, need be in writing    *Castle* v. *Persons, supra.* See, also, *Murphy* v. *Bordwell* (1901), 83 Minn. 54, 85 N. W. 915, 85 Am. St. 454, where it was held that a gift of a bank deposit might be effected though there was no change of credit on the books of the bank, where the donor and donee, being present in the bank, the donor expressed a present purpose to give the deposit to the

donee and, in order to carry out that intent, directed the cashier of the bank to make out the necessary writings to enable her to do so.

The intention of the donor "when clearly ascertained and fairly consummated, within the meaning of well-established rules, is not to be thwarted by a narrow and illiberal construction of what may have been intended for and deemed by him a sufficient delivery. The rule which requires delivery of the subject of the gift is not to be enforced arbitrarily." *Devol* v. *Dye* (1890), 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439.

For a general discussion of gifts, see *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25; *Goelz* v. *People's Sav. Bank* (1903), 31 Ind. App. 67; *Teague* v. *Abbot* (1912), 51 Ind. App. 604; *Ross, Exr.,* v. *Watkins* (1923), 80 Ind. App. 487, 141 N. E. 477.

The evidence in this case is sufficient to sustain a gift *inter vivos* of the $500 deposit. There were ample funds in the possession of appellant to pay all claims against his decedent's estate including the expenses of her last sickness, her burial expense and the costs of administration. The gift to the mother cannot be held fraudulent on the ground that the estate is insolvent. If the money remaining in the hands of appellant after he pays the balance due on the claims for last sickness and burial is not sufficient to pay appellant and his attorney for conducting this litigation, the loss should be theirs and not charged against the property which the decedent gave to her mother.

Judgment affirmed.