WARNER ET AL., ADMINISTRATORS, *v.* KEISER ET AL.
EXECUTORS.

[No. 13,982. Filed August 11, 1931. Rehearing denied October
30, 1931. Transfer denied December 17, 1931.]

6.5

550

*McClellan & Hensel* and *Morris L. Johnston*, for appellees.

WOOD, J.—The appellants, as administrators *de bonis non* with the will annexed of the estate of Joel M. Maring, deceased, filed what they denominated a "petition" in the court below, making the appellees, the executors of the estate of Grace K. Maring, deceased, defendants thereto, in which they sought an order requiring the appellees, as such executors to assign and deliver to appellants certain shares of stock; to account for and pay over certain dividends received or to be received upon said stock, and for such other orders as they might be entitled to in the premises. To this petition the appellees filed a demurrer for want of facts, which was sustained. Appellants refused to plead further, and judgment was rendered against them. From this judgment, appellants have appealed, assigning as error that the court erred in sustaining the demurrer of appellees to appellants' complaint.

The facts alleged in the petition, omitting the formal part thereof, were substantially as follows: On January 21, 1922, Joel M. Maring was the owner of 3,412 shares of common stock, of the par value of $100 per share, in the Western Brick Company, a corporation organized under the laws of the State of Illinois, with its principal office in the city of Danville, Illinois; this stock and the ownership thereof were represented and evidenced by stock certificate No. 1 of said company, issued in the

name of and held by Joel M. Maring; on that date, he, by assignment, indorsed on the back of the certificate of stock, transferred the same, and the stock represented thereby, to one William M. Speare; this certificate so indorsed was, on the same date, delivered by Maring to one William C. Rankin, who was then the secretary of the Western Brick Company, with instructions to Rankin to transfer the stock upon the transfer books of the company to Speare, and to have the company issue to Speare, in his name, a certificate for all the stock; at the same time, Maring also instructed Rankin that the stock thus transferred to Speare was transferred to him for the following and for no other purposes, namely: to transfer to himself, Speare, absolutely, 250 shares, to transfer to one Jacqueline Speare, absolutely, 50 shares, and to transfer to Rankin and one George E. Keiser, as trustees for Grace K. Maring, the wife of Joel M. Maring, 3,112 shares of said stock, to be held by them, under a trust agreement, the terms and conditions of which Maring had given to his attorney, and which was to be prepared by the attorney, and executed by all parties; Rankin was further instructed by Maring not to permit Speare to use the stock for any other purpose than as above specified; on the same date, Maring also advised Speare that he had assigned the stock to him, giving to Speare the same instructions regarding its disposition that had been given to Rankin as above set out.

On January 25, 1922, pursuant to the instructions given at the time of the transfer and assignment of the same, stock certificate No. 1 was canceled by the Western Brick Company and stock certificate No. 23 for 3,412 shares of the capital stock of the company was issued in the name of William M. Speare; upon the same date, pursuant to the instructions so given by Maring, Speare, by his assignment indorsed upon the back of said certificate No. 23, transferred the stock so evidenced, as fol-

lows: 250 shares to himself, 50 shares to Jacqueline Speare and 3,112 shares to William C. Rankin and George E. Keiser, trustees; and, upon the same date, in accordance with the indorsement and transfer made by Speare, the Western Brick Company issued and delivered to William M. Speare its stock certificate No. 25, for 250 shares of its capital stock, and to Jacqueline Speare, its stock certificate No. 26, for 50 shares of its capital stock.

On January 21, 1922, being the same date on which he made the assignment and transfer of stock as above set out, Joel M. Maring executed his last will and testament, which is set out in full in appellants' petition; Item 1 provides for the payment of debts; Item 2 gives to his wife, Grace K. Maring, in fee simple, his farm in Perry Township, Delaware County, Indiana, including all personal property and crops; in connection with this gift, the testator uses this language: "It is the purpose, spirit and intention of this item of my will to treat my said farm and all the equipment thereon and everything connected therewith, owned by me, as a separate entity of my estate, distinct from all the remainder of my estate, and to devise and bequeath the same to my said wife"; in the same item of his will he gave his wife, in fee simple, the residence property occupied by them in the city of Muncie, together with all wearing apparel, ornaments, jewelry, household goods, equipment and decorations; Item 3 gives to a niece a house and lot in the town of Caldwell, Ohio; Item 4 provides that, after having satisfied the terms and conditions of the preceding items of his will, his wife, Grace K. Maring, shall have a full one-half of all other property of which he died possessed, to be hers absolutely; Item 5 provides for the disposition of the property willed to his wife, in the event of her death before his; Item 6 establishes a trust fund of $100,000 for his sister, Elizabeth Maring, during her life; Item 7 establishes a trust fund of $75,000 for his

sister, Mary M. Davis, during her life; Item 8 establishes a trust fund of $25,000 for his brother-in-law, Rev. David Davis, during his life; Item 9 provides for the occupancy by his sister, Mary M. Davis, and her husband of a house and lot in Muncie, during the life of either, and the survivor; Item 10 appoints The Merchants Trust and Savings Company, as trustee, to carry out the trust created under Items 6, 7, 8 and 9 of his will; Item 11 disposes of the remainder of his estate, including that over and above the property given in trust in Items 6, 7, 8 and 9, also including the property given in trust, after the expiration of each of the respective life estates; Item 12 contains advice as to the method of administering his estate, and Item 13 appoints his wife as executrix.

Joel M. Maring died on January 28, 1922, leaving said will in full force and effect; this will was duly admitted to probate on February 3, 1922, and Grace K. Maring, his surviving widow, named as executrix, qualified and entered upon the discharge of her duties; Joel M. Maring left no father or mother, no child or children, nor the descendants of any deceased child or children surviving him.

On or about February 2, 1922, the attorney whom Maring had instructed to prepare the trust agreement under which the 3,112 shares of stock were to be held for his wife, Grace K. Maring, presented to William M. Speare such agreement, containing the terms and conditions as specified by Joel M. Maring; this agreement was executed by William M. Speare, William C. Rankin, George E. Keiser, Grace K. Maring and Western Brick Company, as directed by Joel M. Maring.

The trust agreement so prepared and executed was in words and figures as follows: "This declaration of trust and agreement executed this 2nd day of February, 1922, by and between William M. Speare, grantor, William C.

Rankin of Danville, Illinois, and George E. Keiser, of Chicago, Illinois, trustees, and Western Brick Company of Danville, Illinois, witnesseth:

"1. That, whereas, said William M. Speare is the holder of three thousand one hundred and twelve (3,112) shares of common capital stock of said Western Brick Company, a corporation organized under the laws of the State of Illinois, which stock was transferred to him by Joel M. Maring for retransfer to Grace K. Maring, of Muncie, Indiana, by way of a trust, and,

"2. Now, therefore, pursuant to the instructions and directions of said Joel M. Maring for the retransfer of said stock, and by and with the consent of Grace K. Maring, I, William M. Speare, do hereby nominate and appoint said William C. Rankin and George E. Keiser as trustees, to take and hold said stock for the use and benefit of said Grace K. Maring, and with the powers and duties, and upon the terms and conditions, herein stipulated, which powers and duties are hereby conferred upon said trustees jointly.

"3. The undersigned, William M. Speare, contemporaneously herewith, submits a letter of instructions to said Western Brick Company relative to the issuance and delivery of such stock, in trust, for said Grace K. Maring.

"4. The said trustee shall hold said stock for the benefit of said Grace K. Maring, and shall collect for her and deliver to her promptly upon the payment thereof by Western Brick Company all dividends that may be declared and paid on said stock from the date hereof to the determination of the trust hereby created.

"5. This trust shall be irrevocable by the grantor.

"6. In the event of the death, resignation or removal of either of said trustees before the expiration of the trust hereby created, the said Grace K. Maring shall have the full power to fill the vacancy thereby created

by appointing the successor or subsequent successors to any such trustee growing out of such death, resignation or removal, the trustee or trustees thus selected by her shall have the same powers and they are hereby clothed with the same powers and enjoined with the same duties as the trustees herein appointed. Provided, however, that at the option of said Grace K. Maring, said trust may be continued and executed to the termination thereof with one trustee only.

"7. This trust may be terminated by said Grace K. Maring at any time after the expiration of three years from the date hereof. But the same shall continue in full force and effect until terminated after three years, provided, however, that such trust shall not in any event extend beyond the period of twenty years from the date hereof. In the event of the desire and determination of Grace K. Maring to terminate this trust she shall notify the then acting trustee or trustees, in writing, of her intention so to do, and for the purpose of such notice it shall be sufficient to deposit a letter in the United States mail duly stamped and addressed to the last known residence address of the then acting trustee or trustees, informing such person or persons of her determination and intention to close the trust. And, thereupon, and within fifteen days thereafter, said trustee or trustees, without other notice or demand, shall assign the said stock so held by them hereunder and deliver the same to the said Grace K. Maring or her representative. And upon the presentation of such stock by said Grace K. Maring or her duly authorized representative to the proper officers of the Western Brick Company, it shall be and is hereby fully authorized to, and it shall, transfer said stock upon its books and issue new stock in lieu thereof to said Grace K. Maring.

"8. The undersigned, trustees, hereby accept the

foregoing trust and agree to perform the terms and conditions thereof.

"9. The undersigned, Western Brick Company, hereby agrees to act in conformity to, and abide by, the terms and conditions of the foregoing declaration and agreement of trust.

"10. The undersigned, Grace K. Maring, hereby consents to all the terms and conditions of this trust.

"11. The undersigned, William M. Speare, hereby now authorizes and directs Western Brick Company to deliver the stock herein specified to William C. Rankin and George E. Keiser, as trustees, in trust for the use and benefit of Grace K. Maring.

"In witness whereof the said grantor and the said trustees and the said beneficiary have hereunto set their hands and seals, and the said Western Brick Company has caused these presents to be duly signed and the corporate seal thereof duly affixed, all duly attested by the secretary of said company this 2nd day of February, 1922.

> "W. M. Speare,
> "Wm. C. Rankin,
> "George E. Keiser,
> "Grace K. Maring,
> "Western Brick Company
> > "By Frank W. Butterworth,
> > > "Vice President.

"Attest: Wm. C. Rankin, Secretary."

On the same date, pursuant to the indorsement of the 3,112 shares of stock upon stock certificate No. 23, made by William M. Speare on January 25, 1922, as heretofore mentioned, and after said trust agreement had been executed, The Western Brick Company issued and delivered its stock certificate No. 27, for 3,112 shares of its capital stock to William C. Rankin and George E. Keiser, trustees,

From the date of the receipt by them of said stock, until October 12, 1926, when Grace K. Maring died testate, said trustees received and turned over to her all dividends and earnings from said stock, which she received and appropriated to her own use; she did not, at any time previous to her death, endeavor to terminate the trust, in accordance with the terms of the trust agreement above set out; she did not, as executrix of the estate of her deceased husband, inventory said stock, or take possession thereof as a part of his estate, neither did she account for or pay over to said estate any portion of the dividends received by her upon said stock, but treated all earnings thereof as her individual property; no consideration of any kind was paid by any person for the transfer of any of the shares of the stock so assigned and transferred.

On November 2, 1926, the appellants were appointed and qualified as administrators *de bonis non* with the will annexed of the estate of Joel M. Maring, deceased; on October 26, 1926, the appellees were appointed and qualified as executors of the last will and testament of Grace K. Maring, deceased; thereafter, on November 30, 1926, stock certificate No. 27, held by William C. Rankin and George E. Keiser, trustees, for Grace K. Maring, was by them assigned to the appellees as such executors, and, on December 1, 1926, the Western Brick Company canceled stock certificate No. 27, and issued to appellees a new certificate for the 3,112 shares of its capital stock, which appellees have held as a part of the estate of Grace K. Maring deceased. Appellants, previous to filing said petition, made a demand upon the appellees for the stock, and for an accounting for earnings received thereon, which demand was refused.

Appellants, in their brief, have set out the basis of their contention, in the following language, which we quote: "Appellants contend that the facts alleged in

their complaint show that the property in controversy belongs to the estate of Joel M. Maring rather than the estate of Grace K. Maring, for each of the following reasons:

"1. That the acts performed and the things done were not sufficient to constitute a valid gift inter vivos, and that there being no valid gift the said Joel M. Maring never divested himself of said property prior to his death and that it belongs to his estate.

"2. That the trust agreement under which Rankin and Keiser, trustees, took possession of the property in controversy was invalid because the provisions thereof violate the statute against the suspension of absolute ownership. Said trust agreement being void the property should revert to the estate of Joel M. Maring.

"3. That the trust agreement contained a power of appointment which was not exercised during the life of the donee of the power or during the life of the intended beneficiary, and that, therefore, the property described reverted to the estate of the donor and would pass under the residuary clause of his will."

We will consider these propositions in the order in which they are presented.

A gift *inter vivos* of personal property contemplates the gratuitous and immediate transfer of the title of the article or subject of the gift by the donor during his lifetime (with the intention on his part to make the gift) to the donee direct or to some other person for his benefit, and an acceptance on behalf of the donee. *Reasner, Admr.,* v. *Bohne* (1921), 76 Ind. App. 114, 129 N. E. 490; *Mullen* v. *Mullen* (1925), 98 N. J. Eq. 728, 130 Atl. 628, 28 C. J. 621; Thornton, Gifts and Advancements §3, p. 92.

It is not necessary, in order to accomplish a gift of personal property, that it be made in writing, but a valid gift can be made by parol, and no particular words are

required to consummate it in that manner. *Devol* v. *Dye* (1890), 123 Ind. 321, 24 N. E. 246, 7 L. R. A. 439; *Ogdon, Admr.,* v. *Washington Nat. Bank* (1924), 82 Ind. App. 187, 145 N. E. 514. There must be a delivery of the gift to the donee, which is so complete in character as to divest the donor of any further dominion over control of or title in the subject of the gift. *Graham, Admx.,* v. *Plotner* (1926), 87 Ind. App. 462, 151 N. E. 735; *Devol* v. *Dye, supra.* The delivery need not be made to the donee personally, but may be made to another as his trustee for his benefit, and such a delivery is as effectual as though made direct to the donee. *Wyble* v. *McPheters* (1876), 52 Ind. 393; *Larimer* v. *Beardsley* (1906), 130 Iowa 706, 107 N. W. 935; *Devol* v. *Dye, supra.* While the law requires delivery of the gift to be made, this rule is not to be enforced arbitrarily. *Teague* v. *Abbot* (1912), 51 Ind. App. 604, 100 N. E. 27; *Ross, Exr.,* v. *Watkins* (1923), 80 Ind. App. 487, 141 N. E. 477; *Stephenson's Admr.* v. *King, etc.* (1883), 81 Ky. 425, 50 Am. Rep. 173; *Devol* v. *Dye, supra; Ogdon, Admr.,* v. *Washington Nat. Bank, supra.* A trust in personal property can be created in parol. Under the law no particular language is required in appointing a trustee, and, when a trusteeship has, in fact, been created, the donor cannot terminate it without the consent of the beneficiary of the trust. *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636, 66 N. E. 51, 67 N. E. 441; *Taber* v. *Zehner* (1911), 47 Ind. App. 165, 93 N. E. 1035; *Grant Trust, etc., Co.* v. *Tucker* (1911), 49 Ind. App. 345, 96 N. E. 487; *Camp* v. *Camp* (1913), 52 Ind. App. 250, 100 N. E. 478; *Williamson* v. *Yager* (1891), 91 Ky. 282, 15 S. W. 660, 34 Am. St. 184; *Devol* v. *Dye, supra; Larimer* v. *Beardsley, supra.* If the gift is beneficial in its character, its acceptance by the donee will be presumed, and this presumption will prevail unless removed by facts and circumstances showing the

contrary, and when the gift is made to a third person as trustees for the donee, the presumption prevails, even though the gift is made without the knowledge of the donee. Acceptance by the trustee inures to the benefit of the donee. *Martin* v. *McCullough, Admr.* (1893), 136 Ind. 331, 34 N. E. 819; *Richards* v. *Wilson* (1916), 185 Ind. 335, 112 N. E. 780; *Goelz* v. *People's Sav. Bank* (1903), 31 Ind. App. 67, 67 N. E. 232; *In re Estate of Stockham* (1922), 193 Iowa 823, 186 N. W. 650, 22 A. L. R. 765; *Sparks* v. *Hurley* (1904), 208 Pa. St. 166, 57 Atl. 364, 101 Am. St. 926; *Martin* v. *Funk* (1878), 75 N. Y. 134, 31 Am. Rep. 446; Thornton, Gifts and Advancements §86, p. 71; *Devol* v. *Dye, supra.* Whether or not there was a trust created, and whether or not some particular person or institution occupies the relation of trustee, and who the beneficiary is, are ultimate facts to be determined in each case from the situation and the relation of the parties to the transaction, the kind and character of the property, the action and conduct of the parties in regard thereto, and, when the language employed by the donor is ambiguous, indefinite or incomplete, and subject to different constructions, the practical interpretation given to it by the parties themselves in accomplishing their purpose is entitled to great weight, and is many times controlling. *Flying Squadron Foundation* v. *Crippen* (1930), 201 Ind. 482, 169 N. E. 843; *Pyle* v. *East* (1915), 173 Iowa 165, 155 N. W. 283, 3 A. L. R. 885; *Grant Trust, etc., Co.* v. *Tucker, supra.* This court has also held, "that it should be the object of the court not to defeat, but rather to carry into effect, the intention of the intestate, if it can find itself able to do so without violation of some controlling principle of law." *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25, 62 N. E. 1028.

The above principles of law seem to be adhered to by the text-writers and the courts without conflict. Author-

ities could be cited in support thereof almost without number. The controversy in the instant case does not arise over the law, but arises on application of the law to the facts alleged in the appellants' petition.

From the facts therein contained, we are warranted in drawing the conclusion that Joel M. Maring was possessed of an estate of more than ordinary proportions. On January 21, 1922, he undoubtedly determined to make a complete disposition of his property, for, upon that day, he attempted to dispose of 3,412 shares of stock in the Western Brick Company, by gift, and executed his last will and testament, in which he disposed of the remainder of his estate, as heretofore indicated. The stock was not specifically mentioned or disposed of in the will. His conduct indicates that it was his wish and intention to dispose of the stock immediately, and not wait until his death to pass the title from himself to the beneficiaries thereof, for, upon the day on which he was engaged in the solemn and important business of preparing his last will and testament, he made a full and complete written assignment of the stock certificate representing 3,412 shares of stock in the Western Brick Company to William M. Speare, who received the same under certain definite instructions from Joel M. Maring, which he carried out, all as heretofore related. Undoubtedly, it was the desire of Maring to vest immediately in his wife the beneficial interest in the stock, otherwise, he could have bequeathed it to her in his will, so he took all the steps he could take and did everything he could do to carry out completely his intention and purpose. When he made the assignment and delivery of the stock to Speare, under the circumstances alleged in the petition, Maring thereby surrendered complete right, title and control thereof to Speare, for the use and benefit of the designated beneficiaries, and, under the above rules, the gift

was accepted by Speare, as trustee, for the use and benefit of Grace K. Maring, and was irrevocable by Joel M. Maring. But appellants say that the gift was not completed before the death of Joel M. Maring on January 28, 1922; that it was necessary, before the title to the stock could vest, that certain things must be accomplished, among which was the preparation and execution of the trust agreement, and that, until that was prepared and entered into, Joel M. Maring reserved to himself the power to withdraw the gift.

In the case of *Martin* v. *Funk, supra,* the donor deposited $500 in bank, to be held in trust for a niece; the account was so entered and a pass book was delivered to the donor. It contained this entry: "The Citizens' Savings Bank in account with Susan Boone, in trust for Lillie Willard. 1866, March 23. $500." The donor retained the pass book until her death; the donee was ignorant of the deposit until after that event. The money had remained in the bank, together with the accumulated interest, during the entire time, except the donor had drawn one year's interest. The court, in a very thorough and exhaustive opinion, in which many authorities were cited and reviewed, held that the donor, by her conduct, constituted herself a trustee for the donee, and that the title to the fund passed, even though she retained possession of the pass book until after her death. The court closed its opinion with this language: "The circumstance that she did not intend that the objects of her bounty should know of her gift until after her death is not inconsistent with it, and the most that can be said is that she may have believed that the deposits might be withdrawn during her life, and the money converted to her own use. It is not clear that she entertained such a belief, but if she did it would not change the legal effect of her acts."

The cases of *Ray* v. *Simmons* (1875), 11 R. I. 266, 23

Am. Rep. 447, and *Minor* v. *Rogers* (1873), 40 Conn. 512, 16 Am. Rep. 69, were cases where the facts were quite similar to the case of *Martin* v. *Funk, supra,* are cited in that case, and, in both of them, the court held that a trust was created in favor of the donee. The court, holding further, in the case of *Minor* v. *Rogers, supra,* that the trust having once been created, the donor could not revoke it, though she had at all times retained possession of the bank book, and never had delivered it to the donee. This court is not unmindful of the statement contained in the case of *Hatton, Exr.,* v. *Jones* (1881), 78 Ind. 466, to the effect that a person cannot appoint himself trustee, and then make a valid delivery of his own property to himself as such trustee, which is in direct conflict with the rule followed in the three preceding cases. They are not referred to in support of that proposition, however, but, for the purpose of illustrating the seeming desire of the courts, where a trust is once found to exist, to give the same effect, if possible.

*Williamson* v. *Yager, supra,* was a case where the donor, by her acts and declarations, indicated that she held certain notes payable to her as trustee for the donees. The court held that the trust, having been established, could not be terminated by the donor as trustee, without the consent of the donees; that the gift was complete even though the donor retained control of the notes. To the same effect is the case of *Grant Trust, etc., Co.* v. *Tucker, supra.*

In the case of *Goelz* v. *People's Sav. Bank, supra,* the donor executed a will giving $5 to her son and all the residue of her property to her three daughters. Thereafter, she deposited $900 in bank for and in the name of her son, it was so carried on the books of the bank, and a pass book issued in his name; this was kept by the donor until her death. Previous to her death, the son had refused to sign a written order authorizing either

the donor or son to withdraw the funds from the bank. It was held, upon these facts, that the deposit of the money in bank in the name of the son constituted a trust; that it had been accepted by him and the gift was complete. In its opinion, the court said: "It has been held that where the donor has done all in his power to complete a gift by relinquishing possession and control of the property to a third person as trustee for the donee, the gift will ordinarily be upheld, although the donee had no knowledge of the transaction. In such case the act of the trustee in receiving the property amounts to an acceptance by him on behalf of the donee." And it was further held in that case that the relation of trustee is not terminated by the subsequent death of the donor. Many authorities are cited in support of this proposition.

In the case of *Re Smith, Bull* v. *Smith* (1901), 84 L. T. Rep. (Eng.) 835, the donor, on August 16, 1900, had his broker purchase certain stocks and shares on the stock exchange. On August 27, 1900, which was "name day" on the stock exchange, the donor instructed his broker that the ~tock and shares so purchased were to be placed in the name of his wife. The broker took the necessary steps to carry out the donor's directions, though, as a fact, the transfers were not actually signed until after August 28, 1901, the day of the donor's death. It was held that the widow was the absolute owner of the stock and shares, Byrne, J., saying: "The testator in the present case appears to have left nothing undone which he could have done to complete the transaction in favor of the wife, and I therefore think that this gift is made out, and that what was done really amounted to a settlement upon the wife and a valid gift to her of this amount of debenture stock and shares."

*Stone* v. *Hackett, Exr.* (1858), 78 Mass. 227, involved the gift of shares of stock and the passing of title under

a written declaration of trust in which the donor reserved "the right to modify said uses or to revoke said trust." The donor died testate with the declaration of trust still in force. In holding that the title to the stock passed to the beneficiaries under the trust, and that the gift was complete notwithstanding the power to revoke the trust contained in the written declaration, the court expressed itself in this language: "The key to the solution of the question raised in this case is to be found in the equitable principle, now well established and uniformly acted on by the courts of chancery, that a voluntary gift or conveyance of property in trust, when fully completed and executed, will be regarded as valid, and its provisions will be enforced and carried into effect against all persons except creditors or *bona fide* purchasers without notice. It is certainly true that a court of equity will lend no assistance towards perfecting a voluntary contract or agreement for the creation of a trust, nor regard it as binding so long as it remains executory. But it is equally true that if such an agreement or contract be executed by a conveyance of property in trust, so that nothing remains to be done by the grantor or donor to complete the transfer of title, the relation of trustee and *cestui que trust* is deemed to be established, and the equitable rights and interests arising out of the conveyance, though made without consideration, will be enforced in chancery. . . .

"The application of the principle established by these authorities is entirely decisive of the rights and duties of the parties to this suit. The conveyance or transfer of the shares to the plaintiff in her capacity as trustee was full and complete and vested in her the legal title to the property. No further act was to be done by the original owner of the shares to consummate the plaintiff's title. As between the parties, the delivery of the certificates of stock, with the assignment of some of

them, and the power of attorney to transfer the others, was equivalent to a complete executed transfer of the shares. Nor is it at all material to the validity of the plaintiff's title, that transfers of the shares had not been recorded in the books of the different corporations and new certificates of stock taken out by her. That was not necessary to the conveyance of the legal title as between the donor and the plaintiff. This is well settled by the authorities in this state. (Citing authorities.) . . .

"It was suggested by the learned counsel for the widow that the donor never parted with his power or dominion over the property, because he retained a right to annul or revoke the trust. But this seems to us quite immaterial. A power of revocation is perfectly consistent with the creation of a valid trust. It does not in any degree affect the legal title to the property. That passes to the donee and remains vested for the purposes of the trust, notwithstanding the existence of a right to revoke it. If this right is never exercised according to the terms in which it is reserved, as in the case at bar, until after the death of the donor, it can have no effect on the validity of the trusts or the right of the trustee to hold the property.

"Nor are we able to see any force in the suggestion that the trust which the donor created in some of its features looked to a disposition of the property which was the subject of the gift after his death. We know of no principle of law which renders such a transfer of property *inter vivos* invalid."

This case was cited and quoted with approval by our Supreme Court in the case of *Wyble* v. *McPheters, supra,* where the facts in some respects were quite similar to those in the case at bar. The application of the rules of law controlling in gifts *inter vivos* are again very concisely set forth by our Supreme Court in the case of

*Martin* v. *McCullough, Admr., supra.* There, the subject of the gift was delivered by the donor to the son, accompanied with certain instructions; the son was also one of the beneficiaries of the gift. The court, in its opinion, said: "The facts very clearly show that the donor parted with all dominion over the notes and securities to George, imparting to George an absolute and unconditional interest in them in his own behalf and as trustee for Polly. The only restraint upon the interests of the several donees was that George should take possession of the securities, and that the donees should own them in equal proportions after being made equal in their advancements from the donor. No word is found to have been uttered by the donor retaining to himself an interest in, possession of, or dominion over, the securities; on the contrary, the intention is apparent that the ownership was to pass to the children at once, and that George was but their trustee to hold the securities for division on the basis directed by the father. After the custody passed to George, the donor exercised no dominion over any portion of the securities, and sought to recall no interest in them.

"We do not deny the rule contended for, that an unexecuted gift is revocable by the death of the donor, as held in *Smith, Admr.,* v. *Ferguson,* 90 Ind. 229, and other cases. Nor do we ignore the rule that a mere agent of the donor, holding the naked possession, only to execute the direction of the donor, cannot defeat such revocation by acts performed after the donor's death. But our holding is that where one 'clearly and intelligently manifests an intention to make a present gift of personal property to another, and in consummation of his intention makes such a delivery to a third person for the use of the intended donee, as he is then capable of making, considering the character and situation of the property, the person to whom delivery is thus made will be presumed,

in the absence of countervailing circumstances, to take the property as trustee of the intended donee, and not merely as the agent of the donor.' (Citing authorities.)

"And we maintain that, when it appears, in addition to these circumstances, that the person to whom such delivery is made is one of the immediate beneficiaries, and receives the deposit coupled with an interest, there can be no reasonable doubt that his possession is that of a trustee for the donees." The court, in support of its opinion, cites the case of *Devol* v. *Dye, supra,* and *Miller* v. *Billingsley* (1873), 41 Ind. 489. See, also, *Snyder* v. *Frank* (1913), 53 Ind. App. 301, 101 N. E. 684; 28 C. J. 640.

In the present case, the donor did everything that he could do to transfer the title to the stock. He made a full, complete and unconditional assignment, without retaining any reservation of title or power of revocation in himself. The stock was transferred on the books of the corporation and a new certificate issued and delivered to William M. Speare, who thereafter made an assignment among the designated beneficiaries, he being one of them, as instructed by the donor. All this was accomplished previous to the donor's death. True, the trust agreement under which Rankin and Keiser were to hold the 3,112 shares of stock for the use and benefit of Grace K. Maring was not executed and the corporation did not issue and deliver the new certificate of stock to them as such trustees until after the death of the donor, though the assignment had previously been made to them. But, from the facts alleged in the petition, it is evident that the vesting of title in the stock in Grace K. Maring was not dependent upon the preparation and execution of the trust agreement. This was rather an expression by the donor of the manner in which he wished the trust to be administered. There was nothing contained in this instruction incon-

sistent with the complete passing of title to the stock. *Dykeman* v. *Jenkines* (1913), 179 Ind. 549, 101 N. E. 1013, Ann. Cas. 1915D 1011; *Richards* v. *Wilson, supra; Keller* v. *McConville* (1913), 175 Mich. 479, 141 N. W. 652; *Sharpe* v. *Sharpe* (1916), 105 S. C. 459, 90 S. E. 34, 3 A. L. R. 891; *Innes* v. *Potter* (1915), 130 Minn. 320, 153 N. W. 604, 3 A. L. R. 896; *Pyle* v. *East, supra;* 14 Am. & Eng. Ency. Law. 1043; 28 C. J. §41, p. 645. We hold, therefore, that the title to the stock passed from Joel M. Maring to his wife, Grace K. Maring, and that the gift was completed before his death.

This brings us to a consideration of appellants' second contention, namely, that the provision in the trust agreement, prohibiting the termination of the trust at any time within the period of three years from the date of its execution is in violation of §12171 Burns 1926. Inasmuch as we are here dealing with a gift *inter vivos,* and a trust agreement executed in connection therewith, for the purpose of determining the intention of the donor, which must be given effect and permitted to control if possible, courts are not limited exclusively to the rules applying to such gifts, but may resort to those rules controlling in the construction of wills. Thus it is the first duty of the court to ascertain the intention of the donor, if possible, and, having done so, to uphold and give effect to the gift, and, in this case, the trust agreement, if it can be done without violating any established rules of law. If the language used in the agreement is susceptible of two constructions, one of which would violate the statute in question, while the other would sustain the agreement and give effect to the intention and purpose of the donor, thereby sustaining the gift, then the last construction should be adopted, since the law presumes that the donor did not intend to violate any statute or rule of law. Likewise, if the clause of the agreement of which appellants complain

is illegal, while the remaining clauses are legal, then the legal parts should be upheld, if they can reasonably be separated from the illegal provision, without changing the general purpose and scheme of the donor and disregarding his clearly expressed intention. *Reeder* v. *Antrim* (1915), 64 Ind. App. 83, 110 N. E. 568, 112 N. E. 551; *Swain* v. *Bowers* (1927), 91 Ind. App. 307, 158 N. E. 598; *Quilliam* v. *Union Trust Co.* (1924), 194 Ind. 521, 142 N. E. 214.

The language in which the agreement is expressed is clear, explicit and without ambiguity, and, when considered in connection with the conduct of Joel M. Maring, leaves no doubt as to his intention. Whether or not the clause prohibiting the termination of the trust before the expiration of three years from the date of the contract is in violation of the above statute, we do not deem it necessary to consider further, for it can readily be deleted from the agreement without in any way destroying the force and effect of the remainder thereof. *Reeder* v. *Antrim, supra; Swain* v. *Bowers, supra; Quilliam* v. *Union Trust Co., supra.*

There is another reason why appellants' contention cannot be upheld. Under the trust agreement, Grace K. Maring was the sole and only beneficiary, with the right to the immediate use and benefit of all income derived from the stock, no other person had any right to or interest therein, or in the principal of the stock, either present or prospective, and upon her death her heirs and representatives were entitled to it. This brings the provision within the rule that, where a person is entitled absolutely to property, and some direction for postponement has been made, presumptively for the donee's benefit, such direction is void, pursuant to the general doctrine that it is against public policy to restrain a person in the use and disposition of property, in which no other person has any interest. Gray,

Rule against Perpetuities (2nd ed.) §120; Chaplin, Suspension of Power of Alienation §394; *Mifflin's Appeal* (1888), 121 Pa. 205, 15 Atl. 525, 1 A. L. R. 453, 6 Am. St. 781; *Sears* v. *Choate* (1888), 146 Mass. 395, 15 N. E. 786, 4 Am. St. 320; *Bennett* v. *Chapin* (1889), 77 Mich. 526, 43 N. W. 893, 7 L. R. A. 377; *Huber* v. *Donoghue* (1891), 49 N. J. Eq. 125, 23 Atl. 495; *Rector* v. *Dalby* (1903), 98 Mo. App. 189, 71 S. W. 1078.

The foregoing conclusions render it unnecessary to consider the third contention of appellants. The beneficial title to the stock having vested in Grace K. Maring, upon her death, the trust ceased and the title vested in her heirs or legatees. *Hancock, Trustee,* v. *Maynard* (1920), 72 Ind. App. 661, 126 N. E. 451.

Judgment affirmed.