Joseph Trow, Respondent, *against* Carrie S. Shannon, Executrix of Ann Lohman, Appellant.

(Decided April 7th, 1879.)

Where, upon the question of whether there had been a valid gift *inter vivos* of certain United States bonds, there was the evidence of the donee that the donor in a conversation with him had said that the bonds were his ; that for several years thereafter the bonds were deposited in a safe belonging to the donor's husband, to which both the donor and donee had access ; that during that time the donor allowed the donee to collect the interest coupons on the bonds, and frequently spoke of the bonds as the donee's ; and where the donee and donor were brother and sister, and prior to the alleged gift the donee had for many years rendered services to the donor : *held*, that there was sufficient evidence to sustain a finding by the jury that there had been a valid gift of the bonds, and an actual delivery of them to the donee.

An error in allowing the plaintiff, in an action against an executrix, to testify in his own behalf concerning personal transactions with her testatrix is cured if the defendant afterwards gave in evidence a deposition of the deceased concerning the same transaction.

Appeal from a judgment of this court, entered upon a verdict for the plaintiff rendered at a trial term, and from an order denying a motion for a new trial upon the minutes.

This action was originally brought against Ann Lohman to recover for the conversion of ten $1,000 United States' bonds, and after her death was continued against her executrix.

The complaint alleged that the plaintiff and Ann Lohman were brother and sister, and had resided together in the city of New York for the thirty years prior to Aug. 15th, 1877, during all of which time the plaintiff was engaged in her service and interest, putting up her medicines and compounds, from the sale of which she had realized over the sum of three hundred thousand dollars ; that on or about the first day of January, 1870, at her residence, No. 657 Fifth Avenue, New York City, Ann Lohman, for and in consideration of said services, and further of the love and affection existing between them as brother and sister as aforesaid, gave and delivered to plaintiff ten $1,000 U. S. coupon bonds, known as the 5-20 bonds ; that she then and there delivered to plaintiff the coupons of the said bonds for the six months' interest then due on them, and thereafter said bonds were put in an envelope, marked " Joseph Trow's property," and placed, with the consent of plaintiff, in her safe at her said residence for safe keeping, plaintiff residing there at the time, and having no other place for the keeping of said bonds ; that the coupons of said bonds were regularly taken and received by plaintiff, at the times on which the same became due and payable, namely, on the first days of January and July, in the years 1870, 1871, 1872, and up to and including the first day of July, 1873 ; that since July 1st, 1873, she had refused to deliver, or permit plaintiff to take the coupons on said bonds, and had also refused plaintiff the possession of the bonds ; that on or about January 1st, 1874, without the knowledge or consent of the plaintiff, she sold the said ten U. S. bonds, and received therefor the sum of $11,500, or thereabouts, and also received the sum of $278 for the coupons due said January 1st, 1874, and appropriated the said sums to her own use.

The answer of Ann Lohman admitted that she had at sundry times employed the plaintiff, but averred that she has

fully paid him for all and every service and services rendered by him, and denied all the other allegations of the complaint.

She alleged, as a further defense, that on or about April 28th, 1877, there was a settlement and an adjustment of all claims whatsoever between the plaintiff and herself, and for a good and valuable consideration by him received the plaintiff released her from all and every claim whatsoever which he then had against her.

On the trial the plaintiff testified as follows in regard to a conversation he had with Ann Lohman :—

" Two weeks after the 1st of January, 1870, she was not very well; I remained home with her, as I always did when she was sick, to take care of her. During that time she had all her bonds out on the bed, and she called me and she said :—' Joseph, there are $200,000 in this envelope for Caroline Summers Purdy, $100,000 for Charles Robert Purdy, and here is $10,000 marked with your own name.' "

Q. These bonds were kept from time to time in what safe ?

A. In the safe in the house—Mr. Lohman's safe.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

Q. State what she said to you, if anything, in regard to the instructions you received as to the bonds marked Caroline Summers Purdy and Charles Robert Purdy.

A. She told me if anything should happen to her, which she was liable to at most any time, to take possession of all that was in the safe and deposit it in the " Safe Deposit Co.," and keep my own bonds myself.

There was also evidence (which is referred to in the opinion) showing that the plaintiff had for several years subsequent to this conversation been allowed to collect the interest coupons on the bonds, and that Ann Lohman had repeatedly spoken of the bonds as belonging to the plaintiff.

The other facts necessary to an understanding of the case are stated in the opinion.

*Orlando L. Stewart*, for appellant.

*Justus Palmer* for respondent.

VAN HOESEN, J.—The plaintiff was bound to show, among other things, that Mrs. Lohman actually intended to make a gift that would take effect immediately, and that she carried that intention into effect by delivering to him the bonds, either at that time or afterwards. If the jury were authorized to draw from the evidence the conclusion that such an intention existed, and that such a delivery was made, we ought not to set aside the verdict, though we should have come to a different conclusion upon the same evidence. We must be able to say that the verdict is without evidence to support it, or that it is so contrary to the evidence as to show passion, prejudice, or corruption. (See *Westerlo* v. *De Witt*, 36 N. Y. 345.) If the only evidence of an intention to make an immediate gift, or if the only evidence of a delivery was the narration by Trow of the conversation which he had with Mrs. Lohman in January, 1870, when she exhibited the bonds, I should doubt if there was evidence sufficient to sustain the verdict. But we have in addition proof that Trow was allowed to collect the coupons on the bonds for several years, and that Mrs. Lohman, on many occasions after the interview spoken of, mentioned the bonds as the plaintiff's bonds. Evidence like this was deemed of controlling importance by Vice-Chancellor Mc-Coon, in *Minchin* v. *Merrill* (2 Edw. Ch. R. 333), and by the old Supreme Court, in *Grangiac* v. *Arden* (10 Johns. 296); and the Minchin case was mentioned with approval by Chief Justice Church, in *Doty* v. *Willson* (47 N. Y. 583). The declarations of the alleged donor are regarded as of great weight when there is other evidence from which the making of a gift may be inferred. Mrs. Lohman repeatedly spoke of having given the bonds to the plaintiff, and her declarations were such that the jury was, in my opinion, warranted in believing that a perfected gift had been made.

Being of the opinion that Mrs. Lohman could not possibly have intended to transfer the title to the $200,000 in bonds to Carrie Purdy, I thought at first that there was as much evidence to show a gift to her as there was to show a gift to Trow. But there is this difference between the evidence to

support the gift to Trow and that which could be relied on to support a gift to the Purdys:—Trow collected the coupons; and Mrs. Lohman spoke of the gift to Trow as something that had taken place. I am aware that a strong argument can readily be framed against the existence of an intent to make an immediate gift, or an immediate delivery, of the bonds, but an argument equally strong was considered insufficient to overthrow the verdict in *Grangiac* v. *Arden*. The case of *Penfield* v. *Thayer* (2 E. D. Smith, 305) was not, in my opinion, so strong as this; and the case of *Cooper* v. *Burr* (45 Barb. 9) was certainly no stronger. In both cases the donor had the power to resume possession at any time after the act of donation; in the Cooper case the donor had the keys in her possession after the alleged gift of the trunks. In this case, the safe where the bonds were kept belonged to Mr. Lohman, and not to the donor; and Trow had the consent of the donor to enter the safe. It is true that she did not, at the time she showed the bonds, expect that Trow would take the bonds at once, but the fact that, with the knowledge of the donor, he availed himself of the profits accruing from the bonds, and that the donor said in plain language that the bonds were his, made out a case upon which the jury might have found an intention to give immediately, and a delivery at some time subsequent to the conversation in January. It was not essential that any formalities should attend such delivery if the jury believed that the donor practically surrendered to Trow the right to take the bonds and their product, and placed them where he as well as she could readily get them when wanted.

I think there was no error in the ruling that the release did not cover the claim in suit; it evidently referred to an entirely different matter.

If the examination of Mrs. Lohman, taken before trial, had not been offered in evidence, I think it would have been a good ground for reversal that Trow was permitted to testify, at the beginning of the trial, what work he had done and what services he had rendered to Mrs. Lohman. It tended to show by his testimony the reasonableness of the provision

made in his favor, and the probability that Mrs. Lohman intended to make him a gift *in præsenti*. This testimony would have been inadmissible under sec. 829, Code Civ. Proc., and would have been obnoxious to the same objection that was taken to the testimony of Brague in *Brague* v. *Lord* (67 N Y. 495). The putting of the examination of Mrs. Lohman in evidence cured the error, however. There is no other point which seems to me to require examination. I think the judgment should be affirmed with costs.

CHARLES P. DALY, Ch. J., concurred.

Judgment affirmed.*

* Affirmed by the Court of Appeals, Nov. 11th, 1879.