Argued September 21; modified October 13, 1948

HALL ET AL. *v*. DOLPH ET AL. AND WATKINS ET AL.

198 P. (2d) 272

*John Lichty,* of Portland, argued the cause and filed a brief for appellants.

*Rex Kimmell,* Assistant Attorney General, argued the cause for respondents. With him on the brief was George Neuner, Attorney General, both of Salem.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY, BRAND and HAY, Justices.

**BAILEY, J.**

This proceeding was instituted on behalf of the State of Oregon by the Governor, Secretary of State, and Treasurer, constituting the Oregon State Board of Control, against Henry V. Dolph, and others, for a decree providing as follows: 1) That neither Frank E. Watkins nor M. J. Larue, named as defendants, nor their heirs or assigns, have any interest in Lots Five and Six, Block Fifteen, Portland, by reason of Item VI of the will of Frank M. Mulkey, deceased, or otherwise, and (2) that the words contained in Item II of said will, by which the testator expresses the hope that an office building will be constructed and maintained on Lots Five and Six in Block Fifteen, Portland, "are not mandatory, and such words

create no legal obligation affecting the state's title to such real property, but that the state's title to said property is free and clear of any obligation whatsoever and with full power of alienation." As alternative relief, if it be found that such words are mandatory and create a legal obligation, plaintiffs pray for a decree, in the public interest, relieving the state from such obligation and authorizing it to use the lots for any purpose it may see fit in the interest of the State of Oregon, "with full power to sell and dispose of such property and to transfer unencumbered title thereto free and clear of any legal or equitable obligation to construct an office building thereon."

From a decree adjudging that the legal title to, and ownership of, the lots hereinbefore mentioned are vested in the State of Oregon "without restriction on its right of alienation and the State of Oregon can sell and convey such title and ownership free and clear of any encumbrance whatsoever"; adjudging that none of the defendants named has any right, title, claim, interest or estate in or to said real property; and further adjudging that, in the event of the sale of said property by the State of Oregon, any and all net proceeds and consideration for such sale and conveyance received by the State of Oregon shall be held by the State of Oregon in trust for the following use and purpose only:

"Such money shall be held in a trust fund to be designated 'The Frank M. Mulkey Memorial Fund'; such money, together with other money that may be available from other sources, may be expended in establishing an office building or other state building in the City of Portland, some suitable portion or portions of which building shall be dedicated to the lasting memory of Senator Frank

M. Mulkey in appreciation for his unselfish and untiring labor and devotion to the city, county and state, the location and specification of such memorial shall be established by order of the Oregon State Board of Control or the Legislative Assembly of the State of Oregon.''

defendants Mabel C. Watkins, Frank E. Watkins, Jr., George E. Watkins and Margery C. Watkins, by her Guardian Ad Litem, Mabel C. Watkins, and M. J. Larue, as residuary devisees under the last will of Frank M. Mulkey, deceased, have appealed.

On the 22nd day of June, 1925, Frank M. Mulkey made and executed his last will and testament. Items II and VI thereof read as follows:

''Item II. I hereby give, devise and bequeath to my beloved cousins, Chester V. Dolph and Marshall R. Armstrong and their survivor, for the term of their natural lives, Lots Five (5) and Six (6) in Block Fifteen (15) in the City of Portland, Multnomah County, State of Oregon, remainder to and in the State of Oregon; and the hope is here expressed that said State of Oregon may at a convenient and opportune time not too far in the future construct and maintain on said premises a suitable office building for the housing and use of such state offices and activities as it may desire in said City of Portland and that the same be dedicated by appropriate ceremony to the permanent and lasting memory of my beloved brother, Ex-Senator Frederick W. Mulkey, now deceased, in appreciation of his unselfish and untiring labor and devotion to the City, county and state he loved so well.''

''Item VI. I hereby give, devise and bequeath to Frank E. Watkins and M. J. (Mose) Larue Lots Three (3) and Four (4) in Block One Hundred and Fourteen (114), City of Portland, County of Mult-

nomah, State of Oregon, and also all the rest and residue of the real property of which I shall die seized and possessed of and not otherwise in this last will and testament disposed of I hereby likewise give, devise and bequeath to said Frank E. Watkins and M. J. (Mose) Larue, their heirs and assigns forever.''

Other devises made by him were as follows: Six lots in Portland to his cousin, Agnes Dolph Nixon; his farm, containing about 228 acres, in Clackamas County, Oregon, to Alma Suckow; and a lot in Salada Beach, San Mateo County, California, to John McBride. He also made numerous bequests in cash, Liberty bonds, and stocks, aggregating approximately $30,000. The value of his entire estate at the time of his death is not disclosed by the record.

Frank M. Mulkey died on July 24, 1927, and on July 30, 1927, his last will was duly and regularly admitted to probate in Multnomah County, Oregon. In due time the administration of his estate was closed and Chester V. Dolph and Marshall R. Armstrong entered into possession of the real property described in Item II of the will.

By the provisions of chapter 481, Oregon Laws, 1929, the Oregon State Board of Control is authorized and directed to have and exercise jurisdiction and control on behalf of the State of Oregon over the interest in and to Lots 5 and 6 in Block 15, in the City of Portland, devised to and vested in the State of Oregon by and under the terms of the above mentioned will, and to represent the state in all proceedings, contracts and conveyances which in the discretion of the board may be deemed necessary or advisable in reference to said property.

Chester V. Dolph died April 21, 1930, and Marshall R. Armstrong passed away on October 29, 1937. Since the last mentioned date the State of Oregon has been, through the Board of Control, in possession of and exercising control and ownership over said Lots 5 and 6, in Block 15. The Board of Control, after an extensive investigation, concluded that it was not in the public interest to construct an office building on Lots 5 and 6, and therefore instituted this suit for a construction of Mr. Mulkey's will.

The complaint, after setting forth the foregoing facts, except those stated in the paragraph referring to other devises and to bequests mentioned in the will, contains the following allegations, which are admitted by the answers, to wit, that never since the State of Oregon has had possession and control of Lots 5 and 6, nor since the death of Frank M. Mulkey, has there been a time when it was either convenient or opportune for the state to construct on said lots an office building, "and, for the reasons hereinafter stated, it is not now, nor will it in the future, be convenient, opportune or advisable for the state to construct and maintain on said premises an office building suitable for the housing of the state offices and activities which are now and will hereafter be maintained by the State of Oregon in the City of Portland".

It is further alleged in the complaint that since the execution of the will changes have taken place, both in the physical conditions in the City of Portland and the extent and magnitude of the state's activities maintained therein, which could not have been anticipated by the testator, rendering it inimical to the public interest and to the welfare of the people of the State of Oregon to carry out the hope of the testator

expressed in Item II of his will, and that this suit is brought for the purpose of relieving the State of Oregon from any legal or equitable obligation "that may have been imposed upon it to construct a state office building on" the property here in question. The changes referred to relate to the greatly increased population of Portland "with the result that traffic and parking conditions in the vicinity of such real property have decreased its suitability as an office building site", and the state's requirement for approximately twice the amount of floor space for state offices.

The appellants are the only defendants who appeared and they will hereinafter be referred to as defendants. Two answers were filed which are practically identical, one by defendants Watkins and the other by defendant Larue. These answers deny that any substantial change has taken place in the physical condition of the City of Portland since the execution of the Mulkey will that would affect the use of the Mulkey property for a state office building. In their answers they affirmatively allege that it was the intention of Frank M. Mulkey to leave the remainder of Lots 5 and 6 to the State of Oregon, "impressed with a trust for the purposes mentioned by him in his will as set forth by plaintiffs in Paragraph IV of their complaint herein", and that the State of Oregon, acting through its regularly constituted officials, to wit, the members of the Oregon State Board of Control, has "elected not to accept the said property for the uses and purposes to which the said Frank M. Mulkey limited the said use by the terms of his said Last Will and Testament" and has by the complaint in this action "expressly renounced the intention of the State of Oregon ever to so use and dedicate it." The answer

filed by the defendants Watkins prays for a decree adjudging them to be the owners and entitled to the immediate possession of an undivided one-half interest in and to Lots 5 and 6 and quieting their titles to said property against any claims of the State of Oregon. The prayer in the answer filed by defendant Larue asks for a decree adjudging him to be the owner and entitled to the immediate possession of an undivided one-half interest in and to Lots 5 and 6 and quieting his title to said property against any claims of the State of Oregon.

It is contended by the defendants that "the precatory language used by the testator, Frank M. Mulkey, created a trust impressed upon the gift to the State of Oregon for a particular purpose", and there "being no general charitable intent connected with the devise, the court improperly applied the law of cy pres." Defendants would have this court hold that the State of Oregon has not only failed to carry out within a reasonable time the trust imposed on it by the will but has, by its regularly constituted officials, elected not to accept the property for the use and purpose specified in the will and has, by the institution of this suit, renounced its intention ever to so use and dedicate it, and therefore they, as residuary devisees of the real property under Item VI of the will, should be declared the owners of the property in fee simple, free and clear of any claim by the State of Oregon.

■ Although the plaintiffs have not appealed from that part of the decree of the Circuit Court holding that a trust was created by the precatory words in Item II of the testator's will, nevertheless the determination of the questions whether that court erred in failing to decree that the defendants were the owners of the

property involved here and in applying the cy pres doctrine to the facts in the case is so connected with and dependent upon those words that the proper construction to be placed thereon is open for consideration on defendants' appeal. 9 Bancroft's Code Practice and Remedies, § 7264, p. 9583; *San Felipe Independent School Dist. v. Nelson,* Tex. Civ. App., 74 S. W. (2d) 136; *Cook v. Commellini,* 200 Wash. 268, 93 P. (2d) 441; *Whalen v. Smith,* 163 Cal. 360, 362, 125 P. 904, Ann. Cas. 1913 E 1319. Unless a trust was created by the precatory expression contained in the will the foregoing questions are not before us for decision.

■ In 1 Beach on Trusts and Trustees, § 67, p. 116, it is stated: "Of the many questions growing out of the construction of wills and the administration of decedents' estates, perhaps the most difficult to settle are those relating to precatory words. It is still a question whether there are any general rules for the interpretation of precatory words that admit of a universal application." The author quotes from Lord Langdale's decision in the case of *Knight v. Knight,* 3 Beav. 148, the following:

> "As a general rule, it has been laid down that where property is given absolutely to any person, and the same person is, by the giver, who has power to command, recommended, or entreated, or wished to dispose of that property in favor of another, the recommendation, entreaty or wish shall be held to create a trust. First, if the words are so used, that upon the whole they ought to be construed as imperative; secondly, if the subject of the recommendation or wish be certain; and, thirdly, if the objects or persons intended to have the benefit of the recommendation or wish be also certain." 3 Beav. 172.

The foregoing excerpt has been frequently cited and quoted with approval by this and other courts of this country. *Cooke v. King*, 154 Or. 621, 630, 61 P. (2d) 429, 62 P. (2d) 20, 107 A. L. R. 881; *Wemme v. First Church of Christ, etc.*, 110 Or. 179, 208, 219 P. 618, 223 P. 250; 3 Pomeroy's Equity Jurisprudence, 4th Ed., § 1014, p. 2253.

The application of the above-mentioned rule involves, in many cases, no difficulty, while in others it is by no means so simple a matter. Lord Langdale, in applying it to the case in which it was announced, observed:

> "I must admit, that in the endeavor to apply these rules and principles to the present case, I have found very great difficulty; that in the repeated consideration which I have given to the subject, I have found myself, at different times, inclined to adopt different conclusions; and that the result to which I have finally arrived has been attended with much doubt and hesitation." 3 Beav. 175.

In 1 Restatement of the Law of Trusts, § 25, it is stated: "No trust is created unless the settlor manifests an intention to impose enforceable duties." Comments a and b under the foregoing statement are as follows:

> "a. The rule stated in this section is applicable although the settlor has called the transaction a trust; *no trust is created unless he manifests an intention to impose duties which are enforceable in the courts.*

> "b. On the one hand, the settlor may manifest an intention to create a trust; on the other hand, his manifestation of intention may amount merely to a suggestion or wish that the transferee should use

or dispose of the property in a certain manner, leaving it to the transferee to follow the suggestion or comply with the wish only if the transferee desires to do so. *No trust is created if the settlor manifests an intention to impose merely a moral obligation.* * * * Italics supplied.

In the instant case the testator devised to two of his cousins a life interest in the real property under consideration. The devise of the remainder of that property to the State of Oregon is followed by these words: "and the hope is here expressed that said State of Oregon may at a convenient and opportune time not too far in the future construct and maintain on said premises a suitable office building for the housing and use of such state offices and activities as it may desire in said City of Portland and that the same be dedicated by appropriate ceremony to the permanent and lasting memory of my beloved brother, Ex-Senator Frederick W. Mulkey, now deceased, in appreciation of his unselfish and untiring labor and devotion to the City, county and state he loved so well."

The hope which the testator expressed is that the State of Oregon will, not from the testator's funds but, from its own funds construct and maintain a suitable office building on the property devised. It is apparent that the testator did not want the building then on the property dedicated to the memory of his deceased brother. There is no evidence of the value of the property at the time of the testator's death in 1927 or at the time the state came into possession of it in 1937. There is evidence that the building on the property was constructed by the father of Frederick and Frank Mulkey some time prior to 1880 and that the upper floors of the building are not tenantable. The property

is 95′ x 100′ in size and is located at the corner of S. W. Morrison Street and S. W. Second Avenue. To construct a suitable office building would cost probably twenty to thirty times more than the value of the real property.

The hope expressed by the testator related as much, if not more, to the funds of the state, sufficient for the construction of a building, as it did to the land. Only by the expenditure of a large sum of money by the state could the testator's hope be realized. As to the funds of the state his hope was not and could not be imperative but only an expression of his desire. In *Toms v. Owen,* 52 F. 417, the testator devised and bequeathed to his wife all his real and personal property and stated in the will that it was his "wish that such property as my wife may have remaining undisposed of at her death, that she should previously will and devise the same to her sister, and to my surviving brothers and sisters, in equal proportions  *  *  *." In holding that no trust had been created and that the testator's widow acquired absolute ownership of the property devised and bequeathed to her, the court said:

"*  *  * When a testator expresses precisely the same wish in relation to his devisee's or legatee's own property as he employs in reference to that devised or bequeathed by himself, can his language be properly construed as indicating an intention to create a trust as to the latter, when no such trust was intended or could be created by the testator in respect to the former? Under such circumstances, can it be properly said that the expressed wish of the testator is any more imperative in the one case than in the other? He certainly has the right and power of disposition in the one case, which he does not possess in the other. But when he expresses the same wish in respect to property previously con-

veyed by deed to the devisee which he expresses in reference to that which the devisee takes by the will, it is straining the rules of construction and interpretation to hold that the testator intended to create a trust as to the property devised, when the same language was not intended to and could not impress any such trust upon the devisee's property to which such wish equally related and applied.''

*Loomis Institute v. Healy,* 98 Conn. 102, 119 A. 31, involved the construction of the will of John Mason Loomis, who gave all his estate to three trustees in trust to pay his debts and expenses of administration, certain legacies after the death of his wife, and an annuity of $5,000 to his sister. The use of the entirety of his estate was given to his wife subject to the aforementioned annuity. His trustees were instructed ''to pay and turn over the entire residue of my estate * * * to the trustees of the Loomis Institute for its sole use forever.'' The will provided that the testator was moved to make the gift to the Loomis Institute ''for the benefit of the whole Loomis family, descended or to be so from Joseph Loomis, who founded the family in America in 1639''. It further provided:

''My will is that no buildings shall be commenced until at least two hundred thousand dollars are in the hands of the trustees of the Institute for that purpose. That not more than one third of the funds of the Institute, shall be at any time invested in the grounds, buildings and outfit of the Institute, the other two thirds, shall be kept invested to produce the income necessary for the support of the Institute, and when the income shall be insufficient to pay the expenses of the Institute, such expenses shall be reduced until the income is equal to their payment, and if the Institute is in need of more income, let it appeal to the Loomis family. That under no circumstances shall any of the property

of the Institute be mortgaged or pledged for any loan or thing whatever or for any purpose whatever. No debt whatever shall be created.''

The trustees of the Loomis Institute asked the advice of the court on the question whether the clause in the foregoing excerpt providing that not more than one-third of the funds of the Institute ''shall be at any time invested in the grounds, buildings and outfit of the Institute'' was mandatory or whether it was merely an expression of a wish on the part of the testator.

The court gave the following as one of its reasons for holding that such provision was not mandatory but merely the expression of a wish:

"There is another well-recognized rule of construction to the effect that no precatory words will create a trust if such words apply not only to the property given by the 'testator but to all of the property of the legatee.' Theobald on Wills (7th Ed. Canadian) 490.

"In Lechmere v. Lavie, 2 Myl. & K. 197, the testatrix gave by her will property to two unmarried daughters, and if they married divided the gift among all her children, and in a codicil added the provision that if the daughters died single, 'of course, they will leave what they have amongst their brothers and sisters or their children.' The court held that no obligation or trust was created by these words, as they applied not only to the property bequeathed, but to all property possessed by her daughters at their death from whatever source derived. Similar testamentary provisions were made in Eade v. Eade, 5 Maddox Ch. 118, and Parnell v. Parnell, L. R. 9 Ch. D. 96, and in each case the court held that no trust was created. The cases above cited are quoted with approval in numerous American cases. It would seem that if one wishes to not only restrict by way of trust the

disposition of any bequest he may make, but also to affect in a like way other property, he cannot do so by precatory words, however emphatic. Apparently such a disposition can only be made by a trust expressly set up and covering specifically the object intended by a testator, or by a gift upon condition subsequent.''

One of the illustrations, under § 25 hereinbefore quoted from 1 Restatement of the Law of Trusts, is the following:

''4. A devises and bequeaths all his property to B, his wife, 'desiring her to give all her estate at her death to my relations.' Since the expression of desire applies not only to A's property, but also to B's property as to which A had no power to create a trust, he does not presumably intend to create a trust as to his property. In the absence of other evidence, B is entitled beneficially to the property and does not take it in trust.''

There is no other evidence which indicates that the testator intended to create a trust. True, there is evidence that he was very proud of the accomplishments of his deceased brother Frederick, but that fact is quite apparent from the language of the will itself. It would appear from the record that the nearest relatives which the testator had at the time of the execution of his will were his first cousins. Three of them were named in the will, to wit, Chester V. Dolph and Marshall R. Armstrong, to whom he devised a life interest in the property here under discussion, and Agnes Dolph Nixon, to whom he devised six lots in Block 2, Palmyra Addition, City of Portland. To Marshall R. Armstrong he also bequeathed certain personal property. Under Item VII of the will the testator bequeathed $1,000 to each of his first cousins living at the time of his death,

provided that the executor of his will, after due and diligent search "shall ascertain the residence and whereabouts of the same before the final closing of the estate herein * * *." But the great bulk of the Frank M. Mulkey estate, other than Lots 5 and 6, was given to his friends or acquaintances. In the circumstances it is understandable why the testator devised the remainder of Lots 5 and 6 to the State of Oregon.

■ The precatory words in Item II of the will of Frank M. Mulkey apply, as we have hereinbefore pointed out, not only to property which he devised to the state but also to the expenditure of state funds. In our opinion these words merely express the testator's wish and not his will. They do not manifest an intention to impose on the State of Oregon enforceable duties. They do not create a trust.

■ The defendants appealed from the entire decree. They assert that the doctrine of cy pres is not applicable to the facts presented in this case. They claim that the court erred in decreeing that the net proceeds realized by the State of Oregon from the sale of Lots 5 and 6 shall be held in trust for a designated use and purpose, and in not decreeing that they are the owners of the property in question on the ground that the State of Oregon has failed and refused to carry out the alleged trust imposed on it. Inasmuch as the remainder of Lots 5 and 6, Block 15, City of Portland, was not devised to the state in trust the court should not have provided how the proceeds from the sale of such property should be held and expended, and in so doing error was committed. The court, however, did not err in decreeing that the defendants have no interest in such property.

That part of the decree adjudging that the legal

title and ownership in Lots 5 and 6, Block 15, City of Portland, Oregon, is vested in the State of Oregon without restriction on its right of alienation and that the defendants have no right, title, claim, interest or estate in or to said property is affirmed, and that part of the decree relating to the manner in which the proceeds from the sale of that property shall be held and used is reversed and the cause is remanded to the Circuit Court with instructions to enter a decree in accordance with this opinion.

No costs will be allowed in this court.