Argued January 11, reargued May 10, reversed
September 6, 1962

# WHITNEY *v.* CANADIAN BANK OF COMMERCE AND STATE LAND BOARD

374 P. 2d 441

*Catherine Zorn,* Assistant Attorney General, Salem, argued the cause for intervenor-appellant. With her on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Ben F. Forbes,* Portland, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

ROSSMAN, J.

This is an appeal by the State of Oregon, intervenor, from a part of a decree of the circuit court. Before quoting the part of the decree challenged by the appeal, we state that ORS 19.023 authorizes appeals from parts of judgments and decrees (see also ORS 19.005 (2)). *Hall et al v. Dolph et al and Watkins et al,* 184 Or 319, 198 P 2d 272, illustrates the operation of partial appeals and indicates that the appellant

is not handicapped by the fact that he appeals from only a part. The decree ruled that the defendant, Canadian Bank of Commerce:

> "* * * pay over to W. Stanley Welborn as administrator of the Estate of Victor Molin, deceased, moneys now on deposit in said bank in the name of Victor Molin, that is, both the savings and commercial accounts * * * with any balance remaining after such payments to be paid * * * to Palma J. Whitney * * *."

The plaintiff is the aforementioned Palma J. Whitney; she instituted this suit against the bank upon averments that shortly prior to his death the fore-named Victor Molin made to her a gift causa mortis of the two bank accounts. After the suit had been instituted Dr. W. Stanley Welborn, mentioned in the quoted passage, was appointed administrator of the deceased's estate and then leave was granted to him to become an intervenor. Later, when the State Land Board heard of the estate and became apprised that Molin had no heirs, the circuit court permitted the state to become an intervenor so that it could claim an escheat. The pleading of the state, as well as that of the administrator, denied the plaintiff's averments that the gift had been made. The decree, as we have seen, sustained the plaintiff's complaint.

Molin, the deceased, possessed the two accounts with the defendant bank. One in the sum of $6,000 was a commercial account. The other in the amount of $6,364.34 was of the savings kind.

After Molin had been a patient for some time of Multnomah County's hospital he became a paying guest of a hotel which the plaintiff operates for elderly incapacitated persons. The plaintiff claims that a few days after Molin had become a guest he became seri-

ously ill and was taken at once to Physicians and Surgeons' Hospital in Portland.

■ The plaintiff gave two accounts of the purported gift which contradict and impeach each other. The two accounts cannot be true. They differ in such matters as time, place and persons present. The plaintiff made no effort to account for the serious contradictions. One of her accounts is stated in her complaint. It is, of course, under oath and over her signature. The other account was given by her as a witness. Upon appeal the plaintiff does not contend that the contradictions do not exist, nor does she undertake to explain them. Her attorney argues, however, "admissions in a pleading that have been amended are extra-judicial," and states that the "original" complaint containing one of the versions of the purported gift was amended. He claims that it was succeeded by an amended complaint and that the original complaint thereupon ceased to be a pleading. According to him, it was necessary to introduce the "original pleading" into evidence in order to enable the court to look at it and that it was not introduced. The truth is that the complaint was never amended. It was not succeeded by an amended pleading or by anything else. It was not even amended by interlineation. The record contains no order permitting an amendment. Accordingly, the two contradictory accounts of the purported gift are before us. They are unexplained. If either of the two is accepted, the other is impeached. That being true, since both accounts were given by the plaintiff, her credibility as a witness is seriously impaired.

The plaintiff's story stands virtually alone. She produced no witness who said he saw the delivery of the two books. The plaintiff's acquaintanceship with Molin was based upon his few days' stay in her hotel.

If she had any conversations with him in that period of time she did not mention them. She expressed her relationship with Molin in this way: "I was simply his landlady, that is all."

If the plaintiff told the truth, not less than three persons saw or knew something concerning the making of the alleged gift. One of the three was an employee of the plaintiff. Another of the three was a nurse in the employ of Physicians and Surgeons' Hospital. And the third was an employee of the defendant bank whom the plaintiff consulted about the purported gift. The plaintiff did not call any one of those three persons and gave no explanation of her failure to have done so.

■ When evidence is within the power of a party to produce and he does not produce it, the evidence which he has produced "should be viewed with mistrust." ORS 17.250 (7). And that which he fails to produce should be presumed to be "adverse" to him. ORS 41.360 (5), (6).

*Grignon v. Shope,* 100 Or 611, 197 P 317, in referring to gifts causa mortis, stated:

> "* * * They are liable to occasion fraud and are subject to many mistakes. They are made without the safeguards cast by the law around the execution of wills. Care should be taken in scrutinizing the evidence of such a gift * * *."

■ The plaintiff was at full liberty and subject to a duty to reveal the full truth about the alleged gift. The duty was hers and not that of someone else. No one silenced her or curtailed her time as a witness. It was the duty of this plaintiff to have cleared the alleged gift of circumstances that cast reasonable discredit upon it. A claimant to a gift causa mortis

is not entitled to it as long as there lingers in the transaction out of which it arose misgivings that cause reasonable minds to hesitate and to doubt its fairness and voluntary character. The plaintiff has made no attempt to explain even the contradictory accounts for which she herself is responsible. Each of her accounts was made under oath. Since both accounts cannot be true, one or both of them must be false.

The foregoing is brief. The court has studied the record with extreme care. The above represents its reaction to it. Since we view the issues of fact adversely to the plaintiff, it is unnecessary for us to express an opinion as to whether or not the delivery of a commercial bank book in the course of a purported gift causa mortis suffices to carry the gift. Therefore, we express no opinion whatever upon that phase of the case.

The part of the decree from which the appeal is taken is reversed.

WARNER, J., dissenting.

The state appealed this case on one issue. That was, could a valid gift *causa mortis* be made of a checking account in a bank when the token of the gift was the bank passbook? The state accepted the facts as otherwise establishing a gift because it did not appeal the court's decision that a gift of the savings account by delivery of the savings account passbook was a valid gift. The identical evidence supported both gifts. The majority is, therefore, placed in the anomalous position not only of deciding issues never presented to the trial court and not properly before us here, but of being obliged to acknowledge that the same facts support a gift of one item but not another. Admitting the evidence of the time and place of the

making of the gift is at variance with the allegations of the complaint, and in that sense constitutes the contradiction to which the majority makes reference, no one, the state, the administrator, nor the bank (all present in court by able counsel), made any objection thereto or otherwise called it to the attention of the trial judge, nor did they or any one of them allude to it, directly or indirectly, during the course of the trial, nor did any one of the intervenors or the parties defendant offer *any evidence of any kind* to rebut any claim made by Mrs. Whitney. Notwithstanding this record of silence by the parties adverse to plaintiff, the majority seizes upon the variance and by so doing derives a conclusion adverse to plaintiff without her having a just opportunity to explain, modify or correct the contradiction.

The issue here is primarily one of law. It is an important one and I propose to address this dissent to the legal questions the court should have decided.

A gift *causa mortis* is a gift of personalty made under the apprehension of death from some existing disease or disability or other impending peril with the implied condition that it shall take effect absolutely only upon the death of the donor caused by the disease or disability from which he is then suffering or the peril impending. *Allen v. Hendrick,* 104 Or 202, 219, 206 P 733 (1922).

Such gifts are not contrary to public policy and will be upheld when clearly established. *Deneff v. Helms,* 42 Or 161, 169, 70 P 390 (1902). But being as they are donations made without the safeguards cast by the law around the execution of wills, claims of gifts *causa mortis* should be carefully scrutinized to prevent fraud and mistake. *Baker v. Moran,* 67 Or 386, 395, 136 P 30 (1913); *Grignon v. Shope,* 100 Or

611, 618, 197 P 317 (1921); 38 CJS 908, Gifts § 92. They may be supported by a fair preponderance of the evidence. *Baber v. Caples,* 71 Or 212, 220, 138 P 472 (1914); 38 CJS 921, Gifts § 118.

The following from *Grignon v. Shope,* supra (100 Or at 617), indicates the factors necessary to constitute a gift *causa mortis*:

"* * * To make a valid and effective gift *inter vivos* there must be an intention to transfer title to the property, as well as the delivery by the donor and acceptance by the donee. * * *"

The questions presented, as declared by the state, are:

"(1) Whether delivery of a bank book covering a commercial, or checking, account constitutes a valid gift causa mortis of the deposit; and (2) whether the evidence of the alleged gift is credible and of requisite probative force."

A simple and more direct statement of the problem is: did Mr. Molin, as donor, make a complete delivery of his interest in his bank checking account by handing the passbook to Mrs. Whitney, as donee, accompanied by words indicating the donor's intention to thereby vest her with complete ownership of the account; or was it necessary for the donor to execute a writing of some kind so evidencing his intention which, on presentation to the bank, with or without the passbook, would legally justify it in transferring to Mrs. Whitney the funds in the donor's checking account?

This court has had frequent occasion to pass upon the validity of gifts *causa mortis* and *inter vivos,* but the precise question respecting delivery is one of novelty in this jurisdiction. We find ourselves confronted with two conflicting lines of judicial thought

concerning the answer. Thus, we are required to make a choice between the old and traditional rules, wherein delivery is evidenced by a very limited *modus operandi,* stressing the delivery of the thing which is the subject of the gift, and a more modern rule, wherein the intention of the donor to make a delivery may be evidenced by his clear and unequivocal words and acts, making a manual delivery or writing unnecessary to complete the delivery of the gift. The first I refer to as the early rule and the latter as the modern rule. The cases cited by the state give support to the older rule.

The early rule is sometimes characterized as the possessory view and the modern rule as the evidentiary view. Cases which are strict in their insistence upon the fulfillment of formulae of surrender of "dominion" by the donor over the subject matter of the gift cling to the possessory rule; that is, make the problem of delivery a problem of transfer of the possession of the thing given. Under the ancient doctrine, if the thing was a chose in action, the law required an assignment in the form of a writing. *Stephenson's Adm'r v. King,* 81 Ky 425, 50 Am Rep 172, 175 (1883), citing 2 Kent, Commentaries.

On the other hand, the more lenient cases, and in the main the more recent ones, holding for the validity of the gift, are substantially in harmony with the evidentiary view; that is, that delivery is a problem of passing title rather than one of transferring possession, the right to which is a necessary corollary to the transfer of title.[1] The evidentiary rule emphasizes the transfer of rights rather than the possession

---

[1] "[E]very gift is a transfer of ownership, and ownership is a right or bundle of rights; * * *." F. W. Maitland, *The Mystery of Seisin,* 2 L Q Rev 481 489 (1886).

of the *res*. The recognition of symbolic delivery supplies a substitute for the ancient manual tradition by giving to the donee a symbol of, or evidence of, donee's possessory rights, but gives him no immediate physical control of the property.

The early view carries the weight of authority in its support. But the modern view, in my opinion, rests on a more sound rationale for its conclusion and carries with it the virtue of adaptability to the exigencies of a given situation. Moreover, as I shall later show, our own decisions have embraced certain concepts of the modern rule to an extent favorable to that conclusion.

Of the various elements of a gift *causa mortis,* historically, delivery has presented the greatest source of difficulty, with the result that the courts have fluctuated between a possessory theory of delivery and a functional or ceremonial one by invoking the phrase "constructive" or "symbolical" delivery. Philip Mechem, *The Requirement of Delivery in Gifts of Chattels and of Choses in Action Evidenced by Commercial Instruments,* 21 Ill L Rev 341, 457, 471 (1926-1927). Because of this confusion, I find it in order to give the question presented by the case at bar more extended attention than would ordinarily seem warranted. This I do in order that there may be no doubt as to the prevailing rule in this jurisdiction.

The matter of evidence sufficient to consummate a valid delivery and the attending confusion which has followed the conflicting judicial pronouncements of adherents to the early rule have been made the subject of many articles by scholars and textwriters, particularly on the part of those who favor a complete abandonment of the possessory concept of manual tra-

dition for the more modern idea represented by the evidentiary rule.[2]

*Foster v. Reiss,* 18 NJ 41, 112 A2d 553, 48 ALR2d 1391 (1955), is a comparatively recent case. It exemplifies the addiction to the ancient rule by those jurisdictions which still follow the same. It is cited by the appellant with great reliance and is, as stated in appellant's brief, a "comprehensive discussion of gifts causa mortis" and where "cases and authorities involving these [older] principles are reviewed."

In *Foster,* Ethel Reiss, the wife of the respondent, about to undergo major surgery, executed an informal writing showing her intent to make a gift to her husband of cash, a savings account, and shares in a building and loan association, all owned by her. The writing was found by the husband in the drawer of a stand next to her hospital bed. His discovery was made pursuant to directions of his wife, relayed to him by a third party, an old friend of his wife, who was also a patient in the hospital. This information was conveyed by Mrs. Reiss's friend to Mr. Reiss while his

---

[2] The foregoing conclusions will be found in the following references. They are also excellent presentations of the history of the earlier rule and the reasons therefor which then obtained and demonstrate the gradual erosion of the early possessory rule in favor of a progressive and growing embracement of the later evidentiary rule: Philip Mechem, *The Requirement of Delivery in Gifts of Chattels and of Choses in Action Evidenced by Commercial Instruments,* 21 Ill L Rev 341 and 457 (1926-1927); Mr. Justice Harlan F. Stone (while Dean of Columbia Law School), *Delivery of Gifts of Personal Property,* 20 Col L Rev 196 (1920); Comment, *Relaxation of the Requirement of Delivery in Gifts of Personal Property,* 6 Ford L Rev 106 (1937); Paul W. Bruton, *Requirement of Delivery as Applied to Gifts of Choses in Action,* 39 Yale L J 837 (1929-1930); W. Lewis Roberts, *The Necessity of Delivery in Making Gifts,* 32 W Va L Q 313 (1925-1926); Brown, *Personal Property* (2d ed), ch VIII, 181-225. See, also, Note and Comment, *Gifts—Delivery—Possessory or Evidentiary View in Oregon,* 21 Or L Rev 190 (1941-1942).

wife was in a coma in the hospital, but before she died. The writing disclosed the hiding places in the Reiss home of the items of property referred to. There they were found by him and taken into his possession shortly before his wife's death. The majority in the *Foster* opinion held in line with the strict rule that "there was no delivery of any kind whatsoever" from the wife to the husband (48 ALR2d at 1398). In so doing the New Jersey court adheres to its very early decision of *Cook v. Lum,* 55 NJL 373, 26 A 803 (1893), on the question of delivery. The *Cook* case is a classic often cited by jurisdictions holding to the earlier possessory rule.

The *Foster* case, notwithstanding its adherence to the earlier rule, recognizes an exception "where 'there can be no actual delivery' " or where " 'the situation is incompatible with the performance of such ceremony.' " (48 ALR2d at 1398)

But the opinion in *Foster* was by a divided court. A vigorous dissent was written by Mr. Justice Jacobs, who observes:

"One fundamental proposition is that, under a legal system recognizing the individualistic institution of private property and granting to the owner the power to determine his successors in ownership, the general philosophy of the courts should favor giving effect to an intentional exercise of that power * * *." (48 ALR2d at 1401)

Two of Mr. Justice Jacobs' associates joined in the dissent, including Mr. Justice Brennan, who was shortly after appointed to the federal Supreme Court.

The article from the Fordham Law Review to which we have made reference makes this cogent observation:

"* * * The movement is toward a more

liberal rule. Courts have been gradually whittling away the common law conception of the requirement of delivery, and thus have produced an enlarged area within which a valid delivery will be upheld. * * *" (6 Ford L Rev at 107)

While Chief Justice of the Massachusetts court, Oliver Wendell Holmes sensed the drift away from the older rules and prophetically foresaw the changes reflected in many of the decisions relied upon by the plaintiff here when he said in the case of *Chadwick v. Covell,* 151 Mass 190, 23 NE 1068, 1069 (1890), which had to do with the validity of a gift of a trademark:

> "* * * The old rule was that 'everything that is not given by delivery of hands must be passed by deed.' 1 Hoy, Max. p. 62, c. 33; Fairfax, J., in Y. B., 21 Hen. VII., 36, p. 1. 45; Shep. Touch. 229. But the formalities required by the early common law have been broken in upon a good deal, although more in England than in this state. It may be that later forms of property not admitting of delivery, but unknown to the old law, or not then the subject of transfer, are free from the restraints of the ancient rule; just as, at Rome, later forms of property could be conveyed without the comparatively archaic ceremonies of mancipation. It may be that even a parol gift of incorporeal property would be sustained, although delivery is impossible from the nature of the case. But that question we leave undecided. * * *"⑨

---

⑨ See Stone, supra (20 Col L Rev at 199), where the author bespeaks the impending change in concepts of delivery: "It is almost inevitable that, as the technical significance of seisin as an element of transfer by gift fades into the background, courts should evidence a tendency to accept other evidence equally corroborative of the intent to give, in lieu of the delivery or vesting of possession in the donee." See, also, 4 Corbin, Contracts, 692-693, § 922 (1951), where he notes the progressive liberality in sustaining gifts.

This transition from the possessory rule to the modern evidentiary rule is revealed by the following cases which stand out in contrast to the strict doctrine applied in *Foster v. Reiss,* supra, and reflect the growing tendency to move away from the highly technical requirements.

The donor in *Stephenson's Adm'r v. King,* supra (50 Am Rep at 173), selected the defendant as her agent for the management of her business affairs, placing in his hands certain money for investment. Sometime prior to her death, she wrote to the defendant inquiring about the condition of her accounts, to which he made a written response showing their status. This letter from the agent was delivered by the donor to the donee as a gift *causa mortis* of the securities held by the defendant. In holding the gift was valid, the court made the following statement:

"* * * No other delivery could have been made, and the arbitrary rule such as formerly existed with reference to the delivery of choses in action, requiring an assignment and delivery of the identical thing in order to make such a gift valid, having long since been abandoned, there is no reason why the intention to give, with the actual delivery of the written evidence of the right to the thing, although in the possession of another, under the belief of the donor that it perfects the gift, should not be held to constitute a valid gift *causa mortis.* * * *" (50 Am Rep at 178)

*Stephenson's Adm'r* was cited with approval in *Waite v. Grubbe,* 43 Or 406, 73 P 206, 99 Am St Rep 764 (1903).

In *Kaufmann v. Parmele,* 99 Neb 622, 157 NW 342 (1916), one Volk was the holder of a receipt for the safekeeping of certain stocks and bonds. Shortly be-

fore his death, Volk delivered this receipt to the plaintiff as a gift, which was held valid, the Nebraska court saying:

> "* * * The receipt was a symbol of ownership. It was written evidence of defendant's obligation to keep the property for Volk and to return it to him or to his assign. It was all Volk had in his possession to deliver when he made his donation. * * * By it plaintiff acquired the rights of Volk, and with those rights defendant is not in a position to interfere. Plaintiff's ownership by gift is therefore established by uncontradicted evidence." (157 NW at 342)

In *Simmonds v. Simmonds' Adm'r,* 133 Ky 493, 118 SW 304 (1909), the person who had custody of certain notes refused to surrender them to the payee so that he could make a gift of them to the maker, the defendant in the court below. The custodian later surrendered the notes to the payee's administrator, who brought suit on them. It was held that the gift to the defendant was complete and a good defense.

The Indiana case of *Teague v. Abbott,* 51 Ind App 604, 100 NE 27 (1912), is very similar in its factual background to *Waite v. Grubbe,* supra. During decedent's last illness his brother's minor step-daughter cared for him. He entrusted her with the combination to his safe, in which were certain bank stocks, and told her she was to have them as her reward. She did not take possession before his death and the bank stocks came into the possession of the decedent's administrator. The court held that the girl's knowledge of the combination of the safe rendered manual delivery unnecessary and the transaction constituted a constructive delivery of the stock and as such made the girl absolute owner. Accord, *Ogdon, Adm'r v. Washington Nat. Bank,* 82 Ind App 187, 145 NE 514 (1924).

The Nebraska court held that there was a good gift in the case of *Dinslage v. Stratman,* 105 Neb 274, 180 NW 81 (1920), where a creditor-donor told his debtor to pay the amount due to a third person.

*Devol v. Dye,* 123 Ind 321, 24 NE 246, 7 LRA 439 (1889), is frequently cited as illustrative of the relaxation of the early rule governing the subject of delivery of gifts *causa mortis.* It has double interest to us here because of this court's reliance upon it in *Waite v. Grubbe,* supra (43 Or at 411), and the importance accorded the holding in the dissenting opinion of Mr. Justice Jacobs in *Foster v. Reiss,* supra.

In the *Devol* case, the donor had given a key to a drawer in his office desk to a trusted friend with directions to deliver the sacks of gold coins and currency, each separately marked with the names of his designated donees, to the parties indicated upon the happening of his death. The Indiana court held the gifts valid. I here quote, as did the dissenting judges in the *Foster* case, the persuasive statement of Mr. Chief Justice Mitchell:

"* * * but gifts [causa mortis] of the character of those in question are not to be held contrary to public policy, nor do they rest under the disfavor of the law, when the facts are clearly and satisfactorily shown which make it appear that they were freely and intelligently made [citing case]. While every case must be brought within the general rule upon the points essential to such a gift, yet, as the circumstances under which donations *mortis causa* are made must of necessity be infinite in variety, each case must be determined upon its own peculiar facts and circumstances [citing cases]. The rule requiring delivery, either actual or symbolical, must be maintained, but its application is to be mitigated and applied according to the relative importance of the subject of the gift

and the condition of the donor. The intention of a donor in peril of death, when clearly ascertained and fairly consummated within the meaning of well-established rules, is not to be thwarted by a narrow and illiberal construction of what may have been intended for and deemed by him a sufficient delivery. The rule which requires delivery of the subject of the gift is not to be enforced arbitrarily. * * *" (24 NE at 248)

*Waite v. Grubbe,* supra (43 Or 406), and *Mackenzie v. Steeves,* 98 Wash 17, 167 P 50 (1917), are generally recognized as marking the extreme swing from the older possessory rule of delivery to the more modern evidentiary rule.[⊕] They are unique and alike in that evidence of the delivery is not supported by any symbolistic token and wherein the gift is predicated solely on the oral words of the donor.

In *Waite,* Mr. Sutherlin, the donor, was old and infirm. He had previously buried sums of money in different places on his premises. Not long before his death and while very feeble, he took his daughter, Mrs. Grubbe, out into the yard. From a sitting position in his garden, he pointed out to her four or five different places where he had buried various sums of money, aggregating approximately $10,000, and told her that he gave it all to her. He admonished her to secrecy and recommended that she leave it where it was until his death. Nine months after the donor's demise, the donee went to the places indicated and recovered the funds. The court, speaking through Mr. Justice Wolverton, held that it was a valid gift *causa mortis.* I will give the *Waite* case further attention later in this dissent.

---

[⊕] See Brown, Real Property, supra, at 109; Mechem, supra (21 Ill L Rev at 484); Roberts, supra (32 W Va L Q at 317).

In the *Mackenzie* case, the donor, while in the hospital dying, gave his automobile to the donee, who accepted it and took possession prior to donor's death. There was no writing, no delivery of keys, no evidence in fact of his intent except his spoken words corroborated by two nurses. It was declared to be a valid delivery, the court saying:

> "If the property is of such a character and the circumstances of the parties are such that there can be no delivery, manual or symbolical, there may be a constructive delivery depending upon the intent of the donor and the subsequent conduct of the donee.  *  *  *" (167 P at 52)

Among the cases depended upon by the Washington court was *Waite v. Grubbe,* supra.

Despite a growing liberality in regard to the delivery of some intangible choses in action, many courts have held that the delivery of a passbook to a commercial or checking bank account is not sufficient to create an irrevocable assignment of the account. The reason usually ascribed by the adherents to the rule is: that such a book is not required to be presented when withdrawals are made; another is that the donee does not thereby lose control of the deposit. See 4 Corbin, Contracts, 672, § 917 (1951), and cases there cited.

To the contrary, the delivery of a passbook is generally said to effectuate a valid gift of the money in a savings bank, for, as it is said, such book is the record of the depositor's account and its production authorizes control of the deposit. 38 CJS 913, Gifts § 101.

I am not impressed with the reasons attempting to distinguish between the value to a holding donee of

a passbook to a savings account as against the claims of a donee who holds the passbook to a checking account. Both accounts are choses in action and for the purpose of gifts *causa mortis*, the passbooks of each should be accorded the same evidentiary weight as evidence of the donor's intention to deliver title.

But conceding for the purpose of argument that the reasons for the distinction between the two types of bank books are well taken and that the savings account book is of higher grade than is the other, especially in the relations of the depositor and the bank, it is a concession of little importance in this matter. Here, the actual delivery of the passbooks from the hands of Mr. Molin to Mrs. Whitney becomes an act of great weight and evidentiary significance, proclaiming the donor's intention to pass the funds in the bank to her as a gift, and affords visual substance to his spoken words to the same effect. I do not look upon this transfer of the books as necessary to vest Mrs. Whitney with title or to meet any requirements of the contractual relations between the bank and Molin as a depositor, but solely as symbols of his donative intentions, which I think are entitled to great respect and which, as said by Mr. Justice McBride, should not be defeated by "mere formal and technical objections" when clear (67 Or at 395, infra).

Moreover, there is a practical aspect which reduces both to the same status so far as the bank of deposit is concerned. This is demonstrated by its answer in the instant matter.

It is a well-known fact that no prudent bank or banker would deliver to the mere holder of a savings passbook, who was not the depositor named therein, any part of the money represented thereby unless and until the holder can demonstrate his right thereto by

satisfactory evidence in addition to a presentation of the passbook itself. Plaintiff's complaint recites the bank's refusal to honor her demand for the funds of Mr. Molin on deposit in both the savings and commercial accounts, thus illustrating the defendant bank's proper sense of caution in matters of that kind. By its refusal to honor Mrs. Whitney's demand, it compelled her to supply, if possible, a judicial determination of her claim of title to both accounts.

My own views are reflected by the reasons given in *McCoy's Adm'r v. McCoy*, 126 Ky 783, 104 SW 1031 (1907), where the court said, at 1032:

"* * * We are of the opinion that there may be a gift of the money on deposit in a bank by the delivery of the pass book; and this, without reference to whether it be a savings bank or an ordinary deposit bank.

"A distinction between savings banks and other banks is made in Jones v. Weakley [99 Ala 441, 12 S 420, 19 LRA 700, 42 Am St Rep 84] and Page v. Lewis [89 Va 1, 15 SE 389, 18 LRA 170, 37 Am St Rep 848], supra, based upon the ground that in savings banks the fund can only be withdrawn by the production of the pass book, hence it is the best delivery available under the circumstances, while in other banks, as the check of the depositor is sufficient to transfer the funds to the holder of the check, and in fact the usual, if not only, method by which the deposit can be transferred, the production of the book at the bank not being necessary, a check should be made out by the donor, as this would be more appropriate evidence of the gift than the delivery of the book. We are not impressed with the soundness of this attempted distinction. It is well settled that there may be a constructive or symbolical delivery, as of the key to a trunk or vault in which the property is deposited, or a book of accounts [citing cases]. And

the delivery of a pass or deposit book in any bank as a gift, although symbolical, manifests as clear an intention to transfer to the donee the money represented by it as does any other constructive delivery. The mere fact that a check might be better evidence of the intention to make the gift complete will not be allowed to defeat the purpose of the donor. In this class of cases, as well as others, the intention of the giver must be looked into. The purpose with which the delivery is made must be considered; and from the facts and circumstances surrounding the transaction the court or jury trying the case must determine whether or not the gift was designed to be and was completed. Generally the delivery must be as perfect as the nature of the property will admit; but the manifest desire of the donor will not be set aside by a narrow construction that would defeat his purpose. In the case before us there is little room to doubt that Mrs. McCoy by the delivery of the book intended to transfer all that the book represented, and in her eyes it stood for all the money on deposit in the bank. If she had written a check for the amount of her deposit and given it to her son, or if the money, in place of being in bank, had been in her possession, and she had handed it to him, it would not have illustrated with any more clearness or certainty her intention than did the delivery of the book. Ellis v. Secor, 31 Mich. 85, 18 Am. Rep. 178."

Accord, *Gray's Adm'r v. Dixon,* 255 Ky 239, 73 SW2d 6, 8 (1934).

The foregoing conclusion finds support in our own earlier decisions. *Waite v. Grubbe,* supra, is the touchstone. As earlier stated, it is one of the decisions in the area of our present inquiry which has embraced the modern, or evidentiary, rule, giving validity to gifts *causa mortis,* to the exclusion of the technical

mandates of the early, or possessory, rule. It has become one of the leading cases on the point decided, i.e., that a valid gift of personal property may be made without physical delivery or transfer of actual possession when the donor expresses a clear donative intent and imparts to the donee the special knowledge of the whereabouts of the intended donation.[9]

Some significant statements in *Waite,* supra, are: "It is not necessary that there be a manual delivery, or an active tradition from hand to hand. The delivery may be constructive or symbolical, but *the general rule is that it must be as perfect and complete as the nature of the property and the attendant circumstances and conditions will permit.*" (Emphasis mine.) (43 Or at 410).[10]

As a corollary to the last quotation from the *Waite* case, the author of the opinion makes the following observation, at page 412:

"* * * Where the intent to bestow is obvious and clear, and the language and deportment of the donor indicate a belief upon his part that he has done all that is necessary to accomplish his purpose, they come to the aid of the act of delivery, * * *." (Citing Thornton, Gifts, § 148.)

And in conclusion, adds at page 413:

"* * * The delivery [from Sutherlin to

---

[9] See Brown, Personal Property, supra, at 109, § 42, n 73; Mechem, supra (21 Ill L Rev at 484); Roberts, supra (32 W Va L Q at 317).

[10] A statement which is nearly an exact counterpart of the foregoing quotation from *Waite* appears in In Re Van Alstyne, 207 NY 298, 100 NE 802, 806 (1913). Referring to it, the writer of the article in 13 Ford L Rev, supra, said: "It is difficult to conceive of a more liberal rule. Thus stated the principle is so broad and permits such latitude that the temper of each court will ultimately determine whether necessity or mere convenience is the test applied to the case at hand." (at 113)

Grubbe] was as complete as the circumstances of the case would permit. * * *"

As indicated by the foregoing statement of facts from *Waite v. Grubbe,* the hidden money of the donor remained in his control with power to reclaim possession down to the time of his death. Indeed, the donee did not attempt to remove the funds from their places of hiding until months after her father's passing. Giving the Sutherlin gift the imprint of validity under those conditions marked a striking departure from cases adhering to the ancient rule, which emphasized the importance and necessity of donor's putting the gift beyond his further control. This feature of the *Waite* case has challenged the comment of those writing to the subject of delivery of gifts *causa mortis.*[7]

Mr. Justice Wolverton, in arriving at his conclusions, leans heavily upon *Cooper v. Burr,* 45 Barb 9, 33 (1865), from whence (at 411) he quotes with approval, including the following statement from that source:

"'* * * The situation, relation, and circumstances of the parties and of the subject of the gift may be taken into consideration in determining the intent to give and the fact as to delivery. *A total exclusion of the power or means of resuming possession by the donor is not necessary.*' "[8] (Emphasis mine.)

The spirit of liberality which pervades *Waite v. Grubbe* and its marked departure from the earlier rule respecting delivery is captured in *Baker v. Moran,*

[7] Mechem, supra (21 Ill L Rev at 486); Brown, Personal Property, supra, at 110.
[8] Followed in Trow v. Shannon, 8 Daly 239, 243, aff'd 78 NY 446 (1879); Gilkinson v. Third Ave. R. Co., 63 NYS 792, 793.

67 Or 386, 136 P 30 (1913), a gift *causa mortis* case, wherein Mr. Chief Justice McBRIDE closes the opinion with this statement:

> "* * * It is true that claims of gifts *causa mortis* should be closely scrutinized with a view to preventing fraud; but, when the intention of the donor is clear, mere formal and technical objections should not be allowed to defeat such intent." (at 395)

From a careful examination of the record it appears that the symbolic delivery made by Mr. Molin to Mrs. Whitney was as perfect and complete as the nature of the property, the situation of the parties, and the attendant circumstances of the case would permit (*Waite v. Grubbe,* supra (43 Or at 410)). The essential facts as to the donative intent, the delivery and acceptance by the donee are as clear and complete as the most exacting might ask. It is obvious that Mr. Molin did all that was necessary to accomplish his purpose. Indeed, in the case at bar, unlike in *Waite v. Grubbe,* we have a symbolic delivery and the testimony of a disinterested and responsible witness, other than donee, to confirm the representations of Mrs. Whitney. Here, contrary to the situation found in *Waite,* the court has more than mere words to evidence Mr. Molin's intention and delivery. There are no circumstances in this case in justification for frustrating Mr. Molin's clear intent by reliance on an ancient rule of formal law, the historical need of which has long ago lapsed.

Each assertion of ownership to such a gift must be examined in terms of its own particular circumstances and each examination must be attended with caution and scrutiny in the avoidance of fraud and mistake which has always governed our approach to

claims of title derived from gifts of that character. *Baker v. Moran,* supra (67 Or at 395); *Grignon v. Shope,* supra (100 Or at 618).

The judgment should be affirmed.

SLOAN and O'CONNELL, JJ., join in this dissent.